UNITED STATES of America, Petitioner,

v.

Honorable Willis W. RITTER, Chief Judge of the United States District Court for the District of Utah, Respondent.

No. 76–1248.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted May 18, 1976.

Decided July 14, 1976.

Certiorari Denied Nov. 8, 1976. See 97 S.Ct. 370.

Robert B. Nicholson, Atty., Dept. of Justice, Washington, D. C. (Thomas E. Kauper, Asst. Atty. Gen., and Catherine G. O'Sullivan, Atty., Dept. of Justice, Washington, D. C., on the brief), for petitioner.

David K. Watkiss, of Watkiss & Campbell, Salt Lake City, Utah, for respondent.

Before McWILLIAMS, BREITENSTEIN and DOYLE, Circuit Judges.

PER CURIAM.

This is a mandamus petition filed by the Antitrust Division of the Department of Justice seeking to oust Chief Judge Willis Ritter, United States District Judge for the District of Utah, as the trial judge in a criminal antitrust action, *United States v. Countryside Farms, Inc., et al.,* Crim.No. 75–76, which cause is awaiting trial in the mentioned court.

The indictment was returned July 28, 1975. It charged the four corporate and two individual defendants with conspiring to fix egg prices in violation of Section 1 of the Sherman Act, 15 U.S.C. Section 1. Arraignment was had on November 24, 1975, and on this occasion Judge Ritter heard the motions for bills of particulars on behalf of some of the defendants and granted them. At that relatively early time he clearly expressed his intention to grant similar motions of the other defendants as soon as the same were filed.[1]

On January 16, 1972, further motions for bills of particulars were heard and these were granted in accordance with the previous announcement. It was then claimed by the defendants that certain of the motions and orders had not been complied with, requiring further bills of particulars, and over the objection of the government attorneys the court ordered the government to satisfy the further requests; the court granted other discovery motions.

In the January 16 session, government attorneys claim that Judge Ritter's disposition toward the government changed.

About this time the government lawyers assert that they learned of resolutions presented to the Utah Bar Association pertaining to Judge Ritter. These had originally been proposed at the June meeting of the Utah Bar June 20–21, 1975. There were a total of five such resolutions.[2] The resolutions were referred to the Bar's Board of Commissioners of which Mr. Harold Christensen, attorney for Olson Farms,[3] was chairman inasmuch as he was also president of the State Bar Association.

On December 17, 1975, the Commission referred the resolutions to the Executive Committee for hearings and investigation. This was a three-member committee of which Mr. Christensen as bar president was chairman. This committee heard testimony on December 27, 1975, and following this it voted to recommend to the Commission that it report adversely on Resolutions A, B, E and No. 1, to take no position on Resolution C, and to support Resolution D. The Executive Committee recommendations were unanimous except for a divided vote on Resolution E.

The Committee also decided on the December 27 occasion to make the resolutions available to Judge Ritter, and approximately a week later Mr. Christensen, in accordance with the Committee's direction, delivered these to the judge. There is no evidence whatever that any impropriety occurred in connection with this delivery.

The Bar Commission accepted the recommendations of the Executive Committee. At the state bar meeting on January 10,

---

1. THE COURT: I am going to sign this one (Olson Farm's motion for bill of particulars), and as they come in, I am going to sign them and give these people the information they need to prepare for trial. Supp.Ex. at 14.

2. Resolution A sought to have the United States House of Representatives investigate the appropriateness of instituting impeachment proceedings against Judge Ritter;

Resolution B sought to have the Tenth Circuit's Judicial Council certify the disability of Judge Ritter pursuant to 28 U.S.C. Section 372;

Resolution C sought the repeal of a grandfather clause which has enabled Judge Ritter to remain Chief Judge for the District of Utah

even though he has passed the retirement age of 70;

Resolution D sought approval for an alternative to impeachment as a means of removing a disabled federal judge;

Resolution E sought approval of a law giving litigants in federal courts one preemptory challenge of the judge assigned to hear their case.

Subsequent to the proposal of these resolutions, yet another one was proposed. This resolution, variously called the "Hansen Resolution" or "Resolution No. 1" sought a petition to the Tenth Circuit Judicial Council requesting that Judge Ritter's cases be taken from him.

3. Olson Farms is one of the defendants in the subject criminal case.

1976, the six anti-Ritter resolutions described above were considered. Mr. Christensen in each instance gave the report of the Commission recommendation. Resolution No. 1 was tabled on a voice vote; Resolutions A, B, and E were defeated in a secret ballot; Resolutions C and D were approved on a secret ballot.

The petition seeking to disqualify was filed on January 23, 1976. The trial in the criminal antitrust case was then set for February 2, 1976, so the government requested the judge to rule quickly on his disqualification, but as of January 29 he had not yet ruled, so the government applied to this court for an extraordinary writ requiring him to rule at once. Thereupon, he set the matter down on January 29, for a hearing on January 30.

The government contends that at the January 16 hearing the judge showed bias in granting all of the motions for bills of particulars on behalf of the defendants and in treating counsel for the government with curtness and sarcasm and in contrast treating Mr. Christensen with great deference. In Appendix I, attached hereto, are some of the statements which are relied on.

The January 30 hearing is also relied upon as showing bias on the part of Judge Ritter. They say that the judge sought out Mr. Christensen's preference as to the order of proceedings and allowed him to cross-examine Mr. Disharoon, the government attorney who signed the affidavit of disqualification. They also point to the fact that at the end of the hearing the judge expressed dismay as to the treatment of Mr. Christensen, characterizing it as "the defamation, holding up to hatred and ridicule and contempt of Mr. Christensen." The judge then made a very deferential apology to Mr. Christensen, as follows:

> My personal preference is [to continue with trial as scheduled] if it doesn't have repercussions against Mr. Christensen, as well as me—I can get along with them— but I don't want to do anything here that

reflects upon Mr. Christensen any further and I certainly don't want to add fuel to the flames of the so-called media involving Mr. Christensen. If they leave him out of it and just shoot at me, why fine, but when they involve a fine, honorable, decent, high-principled man of the bar like Mr. Christensen, I think it's an outrage. App. 157–58.

Inasmuch as the disqualification motion was not decided immediately, this court stayed the trial; then on March 29, 1976, Judge Ritter issued an opinion and order denying the government's disqualification motion. The opinion held that there had been a failure to comply with a number of the technical requirements of 28 U.S.C. Section 144 and 28 U.S.C. Section 455(a). It was also adjudged that the facts alleged in the affidavit were inadequate.

The Department of Justice contends 1) that Judge Ritter's relationship to Mr. Christensen constitutes actual bias requiring disqualification. They aver that Mr. Christensen acted as Judge Ritter's judge and advocate; 2) also relied on is the conduct of Judge Ritter at the January 16 and January 30 hearings which they say evidences actual bias in favor of Mr. Christensen and against the government attorneys and in turn against the government; 3) it is contended that the total facts, the action of the Bar Commission of which Mr. Christensen was a member, plus Judge Ritter's alleged deferential attitude toward Mr. Christensen and his alleged angry attitude toward government counsel create an appearance of bias violative of 28 U.S.C. Section 455(a).

## I.

▮ The government predicates its petition on 28 U.S.C. Sections 144, 455(a). The former allows a party to request disqualification of a district judge when he has a personal bias or prejudice either against him or in favor of any adverse party. It also prescribes procedure.[4] The filing of

---

4. 28 U.S.C. Section 144 states:
Whenever a party to any proceeding in a district court makes and files a timely and

sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in

the affidavit does not bring about the disqualification. The trial court determines its sufficiency. The review is, however, restricted to its legal sufficiency and does not include the truth of the allegations.[5] There must be facts, however, to establish personal bias. Section 455(a) is broader. It applied to any judge and includes that he "shall disqualify himself in any proceeding in which his impartiality might be reasonably questioned." Prior to the 1974 revision, Section 455 read:

> Any justice or judge of the United States shall disqualify himself in any case in which he has a substantial interest, has been of counsel, is or has been a material witness, or is so related to or connected with any party or his attorney as to render it improper, in his opinion, for him to sit on the trial, appeal, or other proceeding therein.

Congress enacted the revision to make the statute conform to the Code of Judicial Conduct, 119 Cong.Rec. 33029 (1973) (remarks of Senator Burdick) as well as to "broaden and clarify the grounds for disqualification", 119 Cong.Rec. 33029 (1973), and to substitute an objective test of reasonableness for the subjective test of the former Section 455. Under the broader standard of revised Section 455(a), disqualification is appropriate not only where there is actual or apparent bias or prejudice, but also when the circumstances are such that the judge's "impartiality might be reasonably questioned." *See* 13 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction, Section 3549. Thus, the grounds for disqualification set out in Section 144—"personal bias or prejudice either against [a party] or in favor of any adverse party"—are included in Section 455. Moreover, the language of Section 455(a) allows

a greater flexibility in determining whether disqualification is warranted in particular situations. 13 Wright, Miller & Cooper, Section 3542.

▪ In *Davis v. Board of School Commissioners of Mobile County,* 517 F.2d 1044 (5th Cir. 1975), *cert. denied,* 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188, 44 L.W. 3589 (1976), it was held that the revised Section 455 did not require disqualification where bias in favor of or against an attorney, as opposed to a party, is alleged. We do not believe, however, that this is strictly true, for bias in favor of or against an attorney can certainly result in bias toward the party. Thus, if a judge is biased in favor of an attorney, his impartiality might reasonably be questioned in relationship to the party. In our opinion the only issue presented is legal sufficiency of the affidavit. Unfortunately for the government, however, the affidavit is filled with conclusions and opinion and is peculiarly short on facts.

## II.

### WHETHER THE GOVERNMENT HAS ESTABLISHED ACTUAL BIAS

In support of its contention that actual bias existed against the government and in favor of the defendants in the subject antitrust litigation, the government relies, first, on the fact that attorney Christensen, counsel for one of the defendants in the case and president of the Utah Bar Association, presided over the Executive Committee and the Commission which considered six resolutions which were so-called anti-Judge Ritter. Two of these, as we noted above, pertained to recommended impeachment and disability proceedings. These were ultimately rejected by the Commission at its midyear meeting. The government also

favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good

cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

5. *See Berger v. United States,* 255 U.S. 22, 34–36, 41 S.Ct. 230, 65 L.Ed. 481 (1921).

points specifically to the fact that Christensen delivered copies of the resolutions to Judge Ritter.

The ultimate contention of the government is that Christensen's activity constituted advocacy on his part on behalf of Judge Ritter. This, according to the further argument of the government, creates what amounts to a per se breach of ethics within the rule that the presence of an attorney for the judge who is also an attorney for a client in the subject litigation requires the ousting of the judge from the litigation. *Rapp v. Van Dusen*, 350 F.2d 806 (3d Cir. 1965) and *Texaco, Inc. v. Chandler*, 354 F.2d 655 (10th Cir. 1965), *cert. denied*, 383 U.S. 936, 86 S.Ct. 1066, 15 L.Ed.2d 853 (1966).

The question is whether Christensen was the judge's attorney. The answer is that he was not Judge Ritter's attorney in any sense. Christensen acted in his capacity as president of the Bar Association. There was no showing that Christensen ever said anything, in these proceedings before the Commission, which were embodied in a report to the membership. Nor does the record reveal advocacy. Christensen merely read the Commission report. In any event, no one could ever accuse Judge Ritter of being in league with the Utah Bar Association, and it is impossible to believe that the membership of the Bar Association voted against the resolutions in order to enhance Mr. Christensen's standing with Judge Ritter. Therefore, we reject the proposition that Christensen was Ritter's lawyer in any sense. We hold this to be an unfounded accusation.

The government's *second* contention is that in subsequent hearings Ritter favored the position of the defendants and was caustic and curt toward government counsel; that he repeatedly prevented them from explaining their position, while at the same time he was deferential to Christensen. This is substantially true and correct.

As to the January 16 proceedings, the unkindness of the judge toward the government arose incident to the judge's rulings on motions of the defendants for bills of particulars. This could not have had anything whatever to do with the proceedings of the Bar Association because on earlier occasions Judge Ritter had granted all of the requests of the defendants for factual information as a part of discovery efforts. At that time, he stated that his position was to grant such requests. Accordingly, there was a lack of ground for surprise when he granted these demands at the January 16 hearing.

At the January 30 hearing the government had requested that Judge Ritter recuse himself. The latter reacted in characteristic manner that this effort impugned his integrity and also that of attorney Christensen. At the January 30 hearing Judge Ritter was indeed caustic and overbearing toward counsel for the government, and part of this no doubt resulted from the filing of the motions demanding that he disqualify himself.

We have examined the colloquy between judge and counsel during these proceedings and it cannot be said that the attitudes displayed could in and of themselves demonstrate prejudice. It might be added that such displays are not infrequent or uncommon.. While we do not condone them, they do not *invariably* evidence bias or prejudice against a party. Sometimes, however, they might foretell injudicious and partisan conduct at trial. Even viewing the facts in their totality, we continue to face a weak factual presentation. There is no indication that Christensen acted unfairly or unethically. There is no bias to be gleaned from Judge Ritter's ruling in favor of the defendants; these rulings were in accordance with the prior ruling which preceded the problem of the resolutions. The only other facts have to do with Judge Ritter's attitude toward the attorneys for the government at the January 16 and January 30 hearings. The judge was disagreeable to the lawyers and at the same time was friendly and apologetic to Mr. Christensen.

## III.

### WHETHER THE TOTAL FACTS DICTATE THE GRANTING OF RELIEF

We have fully considered the so-called horse cases. *United States v. Hatahley,* 257 F.2d 920 (10th Cir. 1958) together with *Hatahley v. United States,* 351 U.S. 173, 76 S.Ct. 745, 100 L.Ed. 1065 (1956) and *United States v. Ritter,* 273 F.2d 30 (10th Cir. 1959), *cert. denied,* 362 U.S. 950, 80 S.Ct. 863, 4 L.Ed.2d 869 (1960). Chief Judge Ritter was the trial judge in all of them. Generally, this was a suit by Navajo Indians under the Federal Tort Claims Act for losses of horses and burrows which were seized by the United States agents on Indian lands. Judge Ritter tried the case and awarded all of the damages prayed for, although there was a lack of proof of damages. The original judgment was appealed to this court and was reviewed in 220 F.2d 666 (10th Cir. 1955), *rev'd in part, aff'd in part,* 351 U.S. 173, 76 S.Ct. 745, 100 L.Ed. 1065 (1956). In our original opinion we reversed on statutory grounds which are not relevant to our present problem. We said there that the case had been tried in an atmosphere of "maximum emotion" and a "minimum of judicial impartiality." When the Supreme Court reviewed this, it remanded the case for reconsideration for damages. The Supreme Court did not endorse this court's criticism of the atmosphere of the case. In a footnote it expressed the opinion that the judge's findings were not impaired. The cause was retried and again came before this court, 257 F.2d 920 (10th Cir.), *cert. denied,* 358 U.S. 899, 79 S.Ct. 222, 3 L.Ed.2d 148 (1958). On that occasion the cause was reversed again because of the excessiveness of the damages, and in the course of the opinion it was suggested that Judge Ritter recuse himself because it was said that he was unable to give the calm and impartial consideration necessary for a fair disposition. This time the Supreme Court denied certiorari. *See* 358 U.S. 899, 79 S.Ct. 222, 3 L.Ed.2d 148 (1958). That was not the end of the matter. The government applied for an order ousting Judge Ritter from the case and ordering that it be tried by another judge. This court then held in 273 F.2d 30, 32, that in view of the whole record, it was convinced that the United States would be unable to obtain a fair and impartial trial before the then presiding judge and that the proper administration of justice demanded that further proceedings be before another judge. It was pointed out that Judge Ritter had not heeded the court's suggestion that he recuse himself. An order was essential.

We have held that the government has failed to prove impropriety on the part of Mr. Christensen and that the government has failed to establish serious misconduct on the part of the presiding judge. It remains, however, for this court to consider the fact that a criminal prosecution is pending. We must not only view carefully and with objectivity the facts presented, we must consider the question whether within the words of Section 455(a), *supra,* the judge's impartiality might reasonably be questioned.

The final question, and that which disturbs us most, is whether in the light of the total facts and viewing the future of this case in the light of Section 455(a), there exists a reasonable likelihood that the cause will be tried with the impartiality that litigants have a right to expect in a United States district court. Unfortunately we cannot predict that it will be. Based upon all of the facts and considering the broad language of Section 455(a) requiring disqualification in any proceeding "in which his impartiality might reasonably be questioned," it is with reluctance that we conclude that the interests of justice require that the cause be tried by another judge, a judge from outside the district, since we are mindful that Judge Anderson presided at the companion trial in the civil action, which grows out of the same factual transaction or transactions. This action is not to be construed as questioning either the integrity or sincerity of the judge. It is a practical action which seeks to avoid stress, trouble and complications in the upcoming trial.

Accordingly, it is so ordered.

The panel is authorized to state that the other members of this court have considered the above and foregoing opinion. The members approve the statements made and the action taken by the panel, as shown in the foregoing opinion.

## APPENDIX I

The government cites Judge Ritter's response to government counsel Spratling's attempt to explain the government's position on the further particulars:

> THE COURT: Let's not have any conversation. Jawbone is not permitted in this courtroom. You fellow from San Francisco might as well find that out now. Now Mr. Christensen, I interrupted you before you finished. App. at 52.

The government also points to the following colloquies:

> MR. SPRATLING: Your Honor; first of all I would like to briefly tell you some of the problems involved in responding to your order.
>
> THE COURT: I don't want to hear any problems at all. I want you to deliver those documents and deliver that information ten days from now air express courier. App. at 64.
>
> MR. FERRARI (defense counsel): Your Honor, the government to date has refused to state the specific acts they intend to prove. We cannot commit ourselves to a limited and specific set of exhibits until we know what we are charged with.
>
> MR. SPRATLING: Your Honor, that is simply not true.
>
> THE COURT: Well, it may not be true but it ain't simple by any means.
>
> MR. SPRATLING: Well, it's not true, your Honor. Your Honor, we have provided a bill of particulars which contains 500 particulars of the acts charged.
>
> THE COURT: Well, I am not going to listen to that kind of conversation. Like my old Model "T" Ford, I run out of gas on any conversation that doesn't specifically and materially and relevantly refer to the discussion. * * * App. at 65–66.

In arguing why certain correspondence should not be discoverable by the defendants, government counsel concluded his argument, " * * * we are extremely concerned that it will curtail the vigorous enforcement of the antitrust laws." The Court responded, "Well, isn't that too damn bad. I am not so sure I understand what the correspondence is." App. at 56.