939 F.2d 647
 20 Fed.R.Serv.3d 1314, Prod.Liab.Rep.(CCH)P 12,861
 Lila Mae SOUDER, Trustee of the Cause of Action for Wrongful
Death of Wesley Elmer Souder, Appellant,
v.
OWENS-CORNING FIBERGLAS CORPORATION; Eagle-Picher
Industries, Inc.; Armstrong Cork Company; GAF
Corporation, former Ruberoid Corp.; Appellees,
Nicolet Industries, Inc., formerly Sall Mountain Company;
Fibreboard Paper Products, Corp., formerly Pabco; The
Celotex Corp.; Appellees,
Raymark Industries, Inc., formerly Raybestos Manhattan,
Inc.; Southern Textile, formerly Southern Asbestos Co.,
Keene Corporation; Combustion Engineering; Pittsburgh
Corning Corp.; Owens-Illinois Corp., Appellees.
OWENS CORNING FIBERGLAS CORPORATION, The Celotex
Corporation; Atlas Turner, Inc.; Eagle Picher
Industries, Inc.; Fibreboard
Corporation; Owens-Illinois,
Inc.; and
Pittsburgh
Corning Corporation,
v.
MANVILLE CORPORATION ASBESTOS, DISEASE COMPENSATION FUND.
Lila Mae SOUDER, Trustee of the Cause of Action for Wrongful
Death of Wesley Elmer Souder, Appellant,
v.
OWENS-CORNING FIBERGLAS CORPORATION; Eagle-Picher Industries,
Inc.; Armstrong Cork Company; GAF Corporation, formerly
Ruberoid Corp.; Nicolet Industries, Inc., formerly Sall
Mountain Company; Fibreboard Paper Products Corp., formerly
Pabco; The Celotex Corp.; Raymark Industries, Inc.,
formerly Raybestos Manhattan, Inc.; Southern Textile,
formerly Southern Asbestos Co.; Keene Corporation;
Combustion Engineering; Pittsburgh Corning Corp.;
Owens-Illinois Corp.; and Manville Corporation Asbestos
Disease Compensation Fund, Appellees.
 Nos. 90-5103, 90-5382.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 13, 1991.
Decided July 29, 1991.
 
 Barbara Louisell, Duluth, Minn., argued (John D. Hagen, Jr., Minneapolis, Minn., on brief), for appellant.
 Todd Koebele, St. Paul, Minn., argued (Jacqueline A. Gaddie, Dale O. Thornsjo and Kirk O. Kolbo, Minneapolis, Minn., and James E. Moon and Timothy C. Godfrey, St. Paul, Minn., on brief), for appellees.
 Before LAY, Chief Judge, and McMILLIAN and ARNOLD, Circuit Judges.
 LAY, Chief Judge.
 
 
 1
 Lila Mae Souder appeals the district court's[1] order granting summary judgment in favor of a group of asbestos manufacturers in a wrongful death case. Souder's husband, Wesley, was a pipefitter who died of lung cancer, allegedly caused by exposure to asbestos products on the job. On defendants' motions for summary judgment, the district court dismissed ten defendants from the case and certified the judgments as final. Souder appeals, contending that she presented sufficient proof of causation under traditional causation principles as well as under the theory of "alternative liability." Souder also argues the district court erred in refusing to grant a continuance of the summary judgment hearing and in certifying as final the partial summary judgment under Fed.R.Civ.P. 54(b). In a separate appeal, consolidated with the above-described action, Souder challenges the district court's refusal to vacate the partial summary judgment order. We also consider Souder's allegations that the district court was biased against her counsel with resulting prejudice to her. We affirm.
 
 Background
 
 2
 Wesley Souder worked as a pipefitter in northern Minnesota for nearly thirty years until he died of lung cancer at age fifty-three. His wife, Lila Mae, sued thirteen asbestos manufacturers for wrongful death, contending that they were liable for Wesley's death by causing him to be exposed to asbestos at work. Her proof consisted of affidavits from doctors stating that asbestos exposure was a significant cause of Wesley's death and affidavits from laborers in the insulation trade who stated that the defendants' asbestos materials were present on job sites in northern Minnesota.
 
 
 3
 Most of the affidavits from laborers stated generally that a given manufacturer's materials had been used in the region during the time Wesley was working and that pipefitters were routinely exposed to asbestos dust. There was less evidence of specific exposures Wesley Souder may have experienced. Hugo Anderson and James Ultican listed specific asbestos materials that were present at a job site in Monticello, Minnesota, where other affiants stated Wesley had worked. Appellant's App. at A-45, A-49. Several workers affirmed that they had worked on many jobs with Wesley where they were exposed to asbestos, but they did not specify the manufacturer of the asbestos. Id. at A-58--A-75.
 
 
 4
 Ten defendants[2] moved for summary judgment, primarily on the ground that Souder had failed to show specific evidence that Wesley had been exposed to their materials. The district court granted the motion without written opinion. However, the court granted the summary judgment motion on the merits, because it stated at the hearing:
 
 
 5
 The court is governed by the rule of Celotex and Liberty Lobby with respect to measure of proof at this stage of proceedings. If in fact the court would have to direct a verdict based on the current state of the record it must grant summary judgment and the motion of the defendants and each of them for summary judgment are in all respects granted....
 
 
 6
 Hearing Tr. at 36 (12/8/89).
 
 Alternative Liability Theory
 
 7
 Souder contends that she demonstrated causation under the doctrine of "alternative liability."[3] Under this theory the burden shifts to the defendants to prove themselves not liable when it appears that multiple defendants are culpable but it is difficult to determine which particular guilty party caused injury to a specific plaintiff. See Summers v. Tice, 33 Cal.2d 80, 199 P.2d 1 (1948). Souder essentially argues that all the defendants are guilty of exposing workers to harmful asbestos, and that they all should share in the liability rather than dismissing her deserving claim for failure to prove specific causation. The Tenth Circuit has applied the Summers doctrine in a similar asbestos case involving Nebraska law. Menne v. Celotex Corp., 861 F.2d 1453 (10th Cir.1988).
 
 
 8
 Because this is a diversity case the court must consider whether Minnesota courts would apply the Summers doctrine in this case. The Minnesota Supreme Court has not adopted or rejected Summers and has only cited the case incidentally on two occasions. Mahowald v. Minnesota Gas Co., 344 N.W.2d 856, 863 (Minn.1984); Mathews v. Mills, 288 Minn. 16, 21, 178 N.W.2d 841, 844 (1970). "If the state's highest court has not ruled on an issue, intermediate appellate court decisions constitute the next best indicia of what state law is." 19 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction Sec. 4507, at 95 (1982). The Minnesota Court of Appeals explicitly rejected Summers in Leuer v. Johnson, 450 N.W.2d 363, 365 (Minn.Ct.App.1990), review denied, (Mar. 16, 1990), and Souder's cited cases do not persuade us that the Minnesota Supreme Court would rule differently than the Leuer court. Consequently, we hold that the doctrine of alternative liability is not available under Minnesota law.
 
 Traditional Causation Theory
 
 9
 Souder contends that summary judgment was inappropriate with respect to Celotex, Fibreboard, and Keene even under traditional principles of causation and burden of proof. Affidavits from James Ultican and Hugo Anderson indicated that the products of these defendants were used during construction of the Monticello power plant and that pipefitters would have been exposed to the products. Appellant's App. at A-45, A-49. Other affidavits stated that Wesley Souder had worked on the construction of the Monticello power plant as a pipefitter. Id. at A-63, A-71.
 
 
 10
 Under Minnesota law, Souder must prove that exposure to defendants' products was a substantial factor in Wesley Souder's death. Flom v. Flom, 291 N.W.2d 914 (Minn.1980). Viewing the affidavits in the light most favorable to Souder, she has proven that Wesley worked at the Monticello power plant in 1969 and that the asbestos products of three defendants were used at that plant from 1970-79. This proof is clearly insufficient because it places Wesley at the plant prior to the date defendants' products were in use.[4] Thus, Souder has failed to prove any exposure and summary judgment for defendants was proper.
 
 Denial of Souder's Motion for
 
 11
 a Continuance
 
 
 12
 Souder next argues that the district court abused its discretion in denying her motion for a continuance, which would have allowed her more time to produce evidence. The record indicates that her attorney suffered from a serious medical illness during prosecution of this case. Her attorney was diagnosed with a malignant brain tumor in March, 1988, and has received extensive treatment requiring considerable convalescence over a period of two years. The district court delayed hearing the defendants' motions for summary judgment for nearly twenty months during this period.
 
 
 13
 Upon returning to practice counsel hired two attorneys to help her complete her backlog of cases. Souder claims one of the attorneys did inadequate work and one of counsel's secretaries quit. Counsel sent several letters to the district court informing the judge of her difficulties in meeting the deadline for plaintiff's response to the summary judgment motions. Counsel missed the deadline of November 29, 1989, but promised to submit her response by December 4, 1989, and later revised that date to December 6, 1989. On December 5, 1989, counsel requested a two-to-three week continuance, which was denied. The court held the hearing as scheduled on December 8, 1989, precluded oral argument from Souder's counsel as a sanction for failure to file a responsive pleading, and granted summary judgment for defendants.
 
 
 14
 In considering whether the court abused its discretion in denying the continuance, one factor to consider is whether Souder was prejudiced by the denial. Myers v. Norfolk Livestock Mkt., Inc., 696 F.2d 555, 558 (8th Cir.1982); Fairway Center Corp. v. U.I.P. Corp., 502 F.2d 1135, 1143 (8th Cir.1974). In this case we cannot say that Souder would have defeated defendants' summary judgment motions had the court granted the continuance. Souder's only claim to additional evidence gathered since the hearing is a document entitled "Souder Work History," which is a list of job sites where Wesley Souder worked along with a list of the insulation contractors and products allegedly used at the site. This work history is largely repetitive of the affidavits that were presented to the district court. More importantly, however, the work history itself is not an affidavit and Souder has made no effort to authenticate the assertions made in the document. The work history apparently was prepared by an investigator hired by Souder, but the source of the information is not identified. Information presented in this matter has no probative value and cannot support the conclusion that failure to grant a continuance prejudiced Souder's case. Cf. Chambers v. United States, 357 F.2d 224, 228 (8th Cir.1966).
 
 
 15
 Beyond the lack of demonstrated prejudice to Souder, the district court's denial of a continuance was within the court's discretion. The court had accommodated Souder's counsel for nearly two years due to counsel's serious illness. However, counsel does not allege illness as the basis for failing to file a response to defendants' summary judgment motions, but instead cites the abrupt departure of a secretary and the inadequate legal work of a lawyer hired to assist on another case. These more mundane excuses for violating court rules do not normally constitute excusable neglect. We find the district court's denial of the request for a continuance was not an abuse of discretion.
 
 Certification of Judgment under
 Fed.R.Civ.P. 54(b)
 
 16
 Souder argues the district court erred in certifying as final its summary judgment order. In reviewing an order certifying a judgment as final this court's role is " 'not to reweigh the equities or reassess the facts but to make sure that the conclusions derived from those weighings and assessments are judicially sound and supported by the record.' " Little Earth of United Tribes, Inc. v. Department of Hous. & Urban Dev., 738 F.2d 310, 313 (8th Cir.1984) (quoting Curtiss-Wright Corp. v. General Electric Co., 446 U.S. 1, 10, 100 S.Ct. 1460, 1466, 64 L.Ed.2d 1 (1980)). Because the district court did not provide a statement of reasons for its certification order our review is somewhat less circumscribed. Id. at 313. Nonetheless, the district court may certify its order if there is no "just reason for delay." Fed.R.Civ.P. 54(b).
 
 
 17
 Souder does not present any just reason for delay, arguing only that she would have additional time to obtain evidence if the judgments were not made final. However, as we found above, there is no indication that additional evidence could be obtained if Souder were provided additional time. In the substantial time since the district court denied her request for a continuance, Souder has produced only the "Souder Work History," which she admits had been prepared prior to the summary judgment hearing. Appellant's Brief at 14. Thus, this court will not reverse the district court's finding that there was no just reason for delay on the entirely speculative premise that Souder might be able to discover additional evidence.
 
 Allegations of Bias
 
 18
 While appeal on the above-described issues was pending, Souder moved to vacate the summary judgment order under Fed.R.Civ.P. 60(b). She supported her motion with an explanation of her counsel's illness and other circumstances that caused counsel's delays and missed deadlines. To a large extent Souder's Rule 60(b) motion is repetitive of her motion for a continuance and is resolved in the same manner.
 
 
 19
 However, Souder also claims that the district court's orders were tainted by the court's extra-judicial bias against her resulting from and demonstrated by 1) an embarrassing personal rebuke and sexist comment directed at counsel by the district court during a separate case in 1984, 2) counsel's efforts to seek a writ of mandamus to disqualify a fellow judge in a different proceeding, 3) the district court's efforts to encourage a former colleague to approach counsel about taking over her pending cases in light of her illness, 4) the court's awareness of sanctions counsel received in other proceedings, and 5) the court's hostile treatment of the attorney who argued Souder's motion to vacate the summary judgment orders. Some of these claims are mentioned in Souder's brief in her appeal from the court's Rule 60(b) order, but Souder also has moved to supplement the record under Fed.R.App.P. 10(e) with a letter, affidavits, and a copy of her motion to disqualify the district court judge in this case.
 
 
 20
 After Souder filed her motion to supplement the record in this case, the district court denied her motion to disqualify. Souder sought a writ of mandamus from this court to disqualify the district court judge. The court dismissed the action stating that the contentions raised concerning bias can be addressed in these two pending appeals. In re Souder, No. 90-2804 (Dec. 4, 1990).[5] Accordingly, we now consider the allegations of bias.
 
 
 21
 Souder alleges bias as defined under both 28 U.S.C. Sec. 144 and 28 U.S.C. Sec. 455. Section 144 requires recusal of a district judge when a party "files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party." In reviewing such affidavits the court must not pass on the factual merit of any allegation but must restrict its analysis to the legal sufficiency of the affidavit. Wounded Knee Legal Defense/Offense Comm. v. F.B.I., 507 F.2d 1281, 1285 (8th Cir.1974). Because this analysis involves only legal issues our review is de novo.
 
 
 22
 At the outset we observe that each alleged act of bias was directed at Souder's counsel and there is no claim of bias toward Souder herself. We have held, as section 144 makes clear on its face, that "[a]ntipathy to an attorney is insufficient grounds for disqualification of a judge because it is not indicative of extrajudicial bias against a 'party.' " Gilbert v. City of Little Rock, 722 F.2d 1390, 1398 (8th Cir.1983), cert. denied, 466 U.S. 972, 104 S.Ct. 2347, 80 L.Ed.2d 820 (1984). A showing of bias against a party as opposed to counsel also is required under section 455 "in absence of [a] showing of bias or personal prejudice to the parties." Id. at 1399.
 
 
 23
 Souder cites several cases for the proposition that a judge's animosity toward the attorney may be imputed to the party. In re Beard, 811 F.2d 818, 830 (4th Cir.1987); United States v. Ritter, 540 F.2d 459, 462 (10th Cir.), cert. denied, 429 U.S. 951, 97 S.Ct. 370, 50 L.Ed.2d 319 (1976); Davis v. Board of School Comm'rs, 517 F.2d 1044, 1050-51 (5th Cir.1975), cert. denied, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976).[6] We have no disagreement with these cases as they acknowledge that, while mere bias against counsel is not grounds for recusal, under specific circumstances bias against an attorney can reasonably be imputed to a party.
 
 
 24
 We also acknowledge that bias solely against an attorney under certain circumstances could be grounds for reversal under the court's supervisory power or as a matter of due process. See United States v. Singer, 710 F.2d 431, 432 (8th Cir.1983). We have considered the allegations of bias against counsel in the present case and, although the transcript shows that the trial court lacked patience with counsel and that there was obvious antipathy between the trial judge and the attorney, there is no evidence that such antipathy to counsel contributed in any way to the court's ruling on the summary judgment. As we have analyzed, defendants were entitled to summary judgment on the merits as a matter of law.
 
 
 25
 In summary, we affirm the district court's order granting summary judgment to ten defendants on the ground that Souder has not met her burden of proof of causation. We further find the district court did not abuse its discretion in denying Souder a continuance, certifying the partial summary judgment orders as final, and denying the motion to vacate the above-described orders. Finally, we hold Souder's claim of extra-judicial bias insufficient to require a reversal of the grant of summary judgment. The district court's orders are AFFIRMED.
 
 
 
 [1]
 The Honorable Donald D. Alsop, Chief United States District Judge for the District of
 Minnesota.
 
 
 [2]
 The Manville Corporation Asbestos Disease Compensation Fund was impleaded by the defendants and did not move for summary judgment. It is unclear from the record what happened to the three other defendants, Nicolet Industries, Inc., Raymark Industries, Inc., and Southern Textile. Proceedings against defendants Celotex Corporation and Eagle-Picher Indus., Inc. are stayed pursuant to orders of the court dated December 20, 1990, and January 31, 1991, respectively, pursuant to orders of the bankruptcy court
 
 
 [3]
 Although Souder did not raise the alternative liability theory before the district court, it is within our discretion to consider a new legal theory involving a pure question of law on appeal. Singleton v. Wulff, 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); Pfoutz v. State Farm Mut. Auto. Ins. Co., 861 F.2d 527, 530 n. 3 (8th Cir.1988)
 
 
 [4]
 Souder relies on James Ultican's statement that "API was the original contractor [at Monticello] and because API carried the products in the previous paragraphs [of the affidavit], I am confident that Pabco, Unibesto and Owens-Corning were used on the site." Appellant's App. at A-49. Because Ultican refers to API as the original contractor, Souder claims this implies that API was the contractor from the beginning of the project and thus necessarily was the contractor when Souder was there in 1969. However, even under this reading of the affidavit Souder cannot prevail. Ultican's statement is purely speculative; he does not state that he observed these products on the site but only that he deduced that the products were on the site based on his knowledge of the contractor's products. Such speculation is legally insufficient to establish the existence of any of the defendants' products at Monticello prior to 1970
 
 
 [5]
 Souder's motion for consolidation of the mandamus action with the present appeals was denied as moot. Id
 
 
 [6]
 In Davis, the court acknowledged the possibility of imputed bias if the attorney and party shared a characteristic, such as race or ethnic background, and the bias for or against the attorney was due to that shared characteristic. 517 F.2d at 1050-51. The court in Beard required additional proof that the alleged bias against the attorney actually caused bias to the party. 811 F.2d at 830. Finally, although the court in Ritter stated that bias for or against an attorney could prejudice the party, it did not set out a standard for determining when a finding of imputed bias would be appropriate. See 540 F.2d at 462. Thus, the cases generally support a theory of imputed bias only where there are alleged additional facts that suggest that bias against the attorney actually extends to the party