FILED
United States Court of Appeals
Tenth Circuit

February 29, 2024

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

FERMIN SAAVEDRA,

    Defendant - Appellant.

No. 22-2149
(D.C. No. 1:22-CR-00636-PJK-1)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **BRISCOE**, and **MORITZ**, Circuit Judges.
_____

In this appeal, we address the tension from judges' dual ethical obligations. Judges must recuse when the public can reasonably question their impartiality and otherwise must sit on the case. *See* 28 U.S.C. § 455(a) (duty to recuse); *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995) (duty to sit). The tension arose here when a judge was assigned a

---

[*]     The parties haven't requested oral argument, and it would not help us decide the appeal. So we have decided the appeal based on the record and the parties' briefs. *See* Fed. R. App. P. 34(a)(2)(C); 10th Cir. R. 34.1(G).

    This order and judgment does not constitute binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. But the order and judgment may be cited for its persuasive value if otherwise appropriate. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

criminal matter where he had a professional relationship with the victims' employer. The judge declined to recuse, and we see no error.

The crime involved an assault on two probation officers working in the probation office for the District of New Mexico. *See* 18 U.S.C. § 111(a)(1). The chief judge drew the case, but recused and issued an order stating that "all judicial officers for the District of New Mexico" must recuse. R. vol. 1, at 9. The chief judge then immediately transferred the case to Judge Paul Kelly.

Judge Kelly is a senior judge of the U.S. Court of Appeals for the Tenth Circuit. To assist the district, Judge Kelly volunteers his time to preside over cases in the District of New Mexico.

When the chief judge transferred the case to Judge Kelly, the defendant (Mr. Fermin Saavedra) asked Judge Kelly to reconsider the transfer order. Mr. Saavedra argued that Judge Kelly was subject to the same concerns that had driven the chief judge's recusal order. Judge Kelly declined to reconsider the transfer order and sentenced Mr. Saavedra to the top of the guideline range (33 months). Mr. Saavedra appeals, arguing that Judge Kelly

- failed to provide an explanation for declining to recuse and

- should have recused to prevent the appearance of bias.

2

The government argues that an appeal waiver applies. We can assume for the sake of argument that the appeal waiver doesn't apply because Mr. Saavedra's appellate arguments would fail on the merits.

Mr. Saavedra points out that Judge Kelly didn't provide a reason to deny the motion to reconsider. Judges must ordinarily explain their denial of a motion to recuse. *See United States v. Greenspan*, 26 F.3d 1001, 1007 (10th Cir. 1994) (stating that "the judge must document the reasons for his or her decision" on recusal). When the judge doesn't provide an explanation, we conduct de novo review. *See Sac & Fox Nation of Okla. v. Cuomo*, 193 F.3d 1162, 1168 (10th Cir. 1999) (stating that "because the judge in this case did not create a record or document her decision not to recuse, we review the denial de novo").[1]

Conducting de novo review, we must consider whether "the reasonable person, were he to know all the circumstances, would harbor doubts about the judge's impartiality." *United States v. Mobley*, 971 F.3d 1187, 1205 (10th Cir. 2020). Under this standard, we conclude that Judge Kelly didn't err in declining to recuse.

Mr. Saavedra asked Judge Kelly to recuse only on the ground that he was subject to the chief judge's order recusing all judicial officers *of* or *for*

---

[1]    Mr. Saavedra agrees that we apply de novo review in light of Judge Kelly's lack of explanation. Appellant's Reply Br. at 1 n.1.

the district. But the chief judge obviously didn't agree: He transferred the case to Judge Kelly soon after entry of the order recusing all the judicial officers for the district.

Mr. Saavedra argues that the reasoning behind the chief judge's recusal order would also have applied to Judge Kelly. But the chief judge said only that his recusal order was "consistent with District wide practices." R. vol. 1, at 9. We have no way of knowing what those practices were or why they might have applied to Judge Kelly.

Without an explanation for the recusal order, we infer that the chief judge didn't intend for it to cover Judge Kelly. After all, why would the chief judge have transferred the case to Judge Kelly if he would have been subject to the same concerns underlying the recusal of all the district judges?

Mr. Saavedra argues that Judge Kelly is a "judicial officer" for the District of New Mexico and has often used probation officers in criminal cases. For this argument, Mr. Saavedra points out for the first time on appeal that Judge Kelly has sentenced at least 25 criminal defendants in the District of New Mexico. But regardless of those ties to New Mexico, the chief judge transferred the case to Judge Kelly right after announcing the recusal of all judicial officers for the District of New Mexico. Given the timing of the transfer order, the chief judge didn't appear to regard Judge Kelly as a judicial officer for the District of New Mexico.

4

Mr. Saavedra points out that Judge Kelly was designated to the district and often held court there. But this designation did not make Judge Kelly a "judicial officer" for the District of New Mexico. *See, e.g.*, 18 U.S.C. § 3141(b) (distinguishing between a "judicial officer of a court of original jurisdiction over an offense" and a "judicial officer of a Federal appellate court"). And Judge Kelly's contribution to the district court's work did not make him a "judicial officer" for the District of New Mexico.[2] Though Judge Kelly helped the district court, he is not subject to the same rules as the district judges recused by the chief judge's order. So Judge Kelly was not subject to the chief judge's recusal order.[3]

Mr. Saavedra also argues that even without the chief judge's recusal order, Judge Kelly should have recused based on his professional relationship with the probation office.

---

[2]   Mr. Saavedra says that an objective observer would interpret the district court's website to say that Judge Kelly is a judicial officer for the District of New Mexico. Appellant's Reply Br. at 7 n.3. But the appellate record contains no information from the website. *See, e.g.*, *Anthony v. United States*, 667 F.2d 870, 875 (10th Cir. 1981) (stating that judicial review is limited to evidence in the record).

[3]   Mr. Saavedra says that Judge Kelly arbitrarily revisited the chief judge's recusal order that disqualified him. Because Judge Kelly revisited the order, Mr. Saavedra says that he was entitled to notice and an opportunity to be heard on the new ruling. Appellant's Opening Br. at 11–12. We disagree: Judge Kelly didn't revisit the chief judge's recusal order, and no one needed to tell Mr. Saavedra in advance that Judge Kelly would get the case.

The appearance of impartiality may be affected by a judge's relationships with participants in the case. The participants include not only parties and counsel, but also individuals who may be affected by the outcome (like the victim in a criminal case) or who assist the judge (like clerks, probation officials, or federal marshals). When these relationships are involved, the court engages in a fact-intensive inquiry into the appearance to a reasonable observer. *See Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995) (per curiam) (stating that recusal decisions under [28 U.S.C.] § 455(a) "are extremely fact driven").

Here we address a judge's professional relationship with the victim of a crime. Courts don't ordinarily require "disqualification of a single judge . . . simply because of a professional relationship with a victim." *Clemens v. U.S. Dist. Ct. for the Cent. Dist. of Cal.*, 428 F.3d 1175, 1180 (9th Cir. 2005); *see United Stats v. Angelus*, 258 F. App'x 840, 843 (6th Cir. 2007) (unpublished) (stating that disqualification isn't required just because the judge has a working professional relationship with the victim); *see also* Richard E. Flamm, *Judicial Disqualification: Recusal & Disqualification of Judges* § 25.7, at 418 (3d ed. 2017) ("Disqualification is . . . unlikely to be deemed to be warranted merely because a crime victim is or was related to another judge; or to a member of the judge's staff, another court officer, or other courthouse personnel."). After all, "[j]udges interact with many different parties in a professional capacity,

6

such as the United States Attorney's Office, the Federal Public Defender's Office, local sheriff offices, and various court personnel." *Angelus*, 258 F. App'x at 843. We don't typically expect judges to recuse themselves whenever they preside over cases involving someone from these organizations. *Id.*

The same is true in criminal cases when representatives of these organizations are victims of the underlying crime. For example, four circuit courts have held that recusal is unnecessary even when the victim is a deputy marshal who was responsible for protecting the sentencing judge. *United States v. Bostick*, 791 F.3d 127, 156 (D.C. Cir. 2015) (Kavanaugh, J.); *United States v. Faul*, 748 F.2d 1204, 1211 (8th Cir. 1984); *United States v. Jacobs*, 311 F. App'x 535, 537 (3d Cir. 2008) (unpublished); *United States v. Angelus*, 258 F. App'x 840, 843 (6th Cir. 2007) (unpublished). Similarly, the Ninth Circuit has held that a judge was "entirely correct" to decline to recuse when the charge involved a threat to kill three fellow judges. *Clemens v. U.S. Dist. Ct. for the Cent. Dist. of Cal.*, 428 F.3d 1175, 1178–79 (9th Cir. 2005) (per curiam). And the Seventh Circuit has held that a judge didn't need to recuse when the criminal charge involved the filing of a fraudulent lien against the chief judge of the district. *United States v. Swallers*, 897 F.3d 875, 788–78 (7th Cir. 2018). In addition, the Eighth Circuit has held that a judge didn't need to recuse when the victims were security guards stationed in the

7

courthouse. *United States v. Ramsey*, 871 F.2d 1365, 1367 (8th Cir. 1989). To our knowledge, no circuit court has held that a judge must recuse just because the victim works for a related agency like the probation office or the marshals service.

Granted, sentencing judges typically get reports prepared by probation officers. So Judge Kelly presumably obtained a probation officer's report in each of his criminal cases. We must consider the significance of these reports on Judge Kelly's impartiality.

Probation officers act as an arm of the court. *United States v. Davis*, 151 F.3d 1304, 1306 (10th Cir. 1998). So when Judge Kelly sat as a sentencing judge, he could visit ex parte with the probation officer before sentencing. *Id.* Mr. Saavedra says that the nature of this relationship rendered probation officers the "advisors" or "agents" of Judge Kelly. Appellant's Opening Br. at 16. But we lack evidence involving Judge Kelly's interaction with any of the probation officers.[4]

In our view, Mr. Saavedra bases his concerns on conjecture about Judge Kelly's relationship with the probation office. In Mr. Saavedra's view, the possibilities could stir questions about Judge Kelly's impartiality.

---

[4]    Although probation officers are appointed and removed by the district court, Judge Kelly had no role in the appointment or removal because he is not a judge on the district court. *See* 18 U.S.C. § 3602(a).

8

In suggesting public concern, Mr. Saavedra points to four opinions where we or other Courts of Appeals said that an objective observer might question the judge's impartiality. But there, the judge or his clerk had blatant ties to a witness, a party, or an attorney representing one of the parties. *United States v. Kelly*, 888 F.2d 732 (11th Cir. 1989) (witness); *Hall v. Small Bus. Admin.*, 695 F.2d 175 (5th Cir. 1983) (party and its attorney); *Potashnick v. Port City Const. Co.*, 609 F.2d 1101 (5th Cir. 1980) (attorney for a party); *United States v. Ritter*, 540 F.2d 459 (10th Cir. 1976) (attorney for a party). The circumstances here don't rise to a similar level of blatant ties.

In *Kelly*, for example, the judge's wife was a close friend of a witness's wife. 888 F.2d at 738. And during the trial, the judge met privately in chambers with the witness's wife. *Id.* When the wife explained that her husband was planning to testify, the judge blamed the defendant for creating a dilemma. *Id.* at 738, 746. The judge's remarks led the Court of Appeals to conclude that he should have recused. *Id.* at 745–46. Indeed, the Court of Appeals explained that the judge had apparently stayed on the case only because he worried that recusal might bar a retrial. *Id.* at 746.

*Hall* involved the need for a judge to recuse based on the conduct of his law clerk. The case involved a class action against the Small Business Administration for gender discrimination. 695 F.2d at 177. The judge's law clerk was a member of the class who had worked at the Small Business

9

Administration, and she had lodged her own complaint against the agency for gender discrimination. *Id.* The clerk also developed ties with the plaintiffs' law firm, agreeing to work there when her clerkship ended. *Id.* at 178. The Court of Appeals concluded that the law clerk's continued involvement in the case, after accepting a job with the plaintiffs' law firm, had created the appearance of bias. *Id.* at 179.

The circumstances in *Potashnick* were just as blatant. There the plaintiff's chief trial counsel had done business with the judge and represented him in a lawsuit by the time of the trial. 609 F.2d at 1107. And the judge's father was a senior partner in the law firm representing the plaintiff, receiving 1% of the firm's profit. *Id.* Together, the judge's ties to the plaintiff's attorney and law firm created an appearance of bias. *Id.* at 1110–11.

Finally, in *Ritter*, one of the attorneys was the state bar president. 540 F.2d at 460. While the trial was pending, the attorney presided over resolutions lodged against the judge. *Id.* Given those circumstances, we concluded that the judge should have recused to avoid the appearance of bias. *Id.* at 464.

Together, *Kelly*, *Hall*, *Potashnick*, and *Ritter* show that a judge's personal tie to a party or its attorney can create an appearance of bias. The public can reasonably suspect bias when a judge meets privately with a witness who's married to the judge's close friend, when the judge presides

10

over litigation involving the judge's own law clerk as a class member, when the judge's father is receiving a percentage of the profit earned by a law firm appearing before the judge, or when one of the attorneys contemporaneously presides over a state bar resolution against the judge. But none of these cases involve potential recusal based on a judge's interaction with an agency performing services for the court (like a probation office or marshals service).

To assess the line between a judge's duty to sit and to recuse, we must consider the circumstances. As discussed earlier, circuit courts have generally concluded that judges need not recuse based on professional relationships with offices in which someone is victimized by a crime. Here there is nothing else to suggest a need to recuse.

*  *  *

In roughly 20 years, Judge Kelly has received presentence reports in about 25 cases from someone in the probation office for the District of New Mexico. But there is no evidence of a personal relationship between Judge Kelly and these probation officers. In these circumstances, the public had little reason to question Judge Kelly's decision not to recuse.

We therefore affirm his denial of Mr. Saavedra's motion to reconsider the chief judge's transfer order.

Entered for the Court


Robert E. Bacharach
Circuit Judge

No. 22-2149, *United States v. Saavedra*
**BRISCOE**, Circuit Judge, concurring.

I concur in the result, but would affirm the judgment of the district court on the grounds that Saavedra's appeal is barred by the waiver of appellate rights provision contained in his plea agreement.

We review de novo the question of whether an appellate waiver contained in a plea agreement is enforceable. *United States v. Ibarra-Coronel*, 517 F.3d 1218, 1221 (10th Cir. 2008). In answering this question, we follow a three-step process, determining: "(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice as we define herein." *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004). Notably, the defendant "bears the burden of establishing these requirements." *United States v. Rollings*, 751 F.3d 1183, 1187 (10th Cir. 2014).

*1. Does Saavedra's appeal fall within the scope of the waiver?*

The plea agreement in this case contained the following appellate waiver provision:

> The Defendant is aware that 28 U.S.C. § 1291 and 18 U.S.C. § 3742 afford a defendant the right to appeal a conviction and the sentence imposed. Acknowledging that, the Defendant knowingly waives the right to appeal the Defendant's conviction(s) and any sentence, including any fine, at or under the maximum statutory penalty authorized by law, as well as any sentence imposed below or within the Guideline range upon a revocation of supervised release in this cause number.

Supp. R. at 18.

Even strictly construing this language, I have little trouble concluding that Saavedra's appeal falls within the scope of the waiver. Although Saavedra's appeal focuses on the question of whether Judge Kelly should have recused himself from the case, Judge Kelly's only involvement in this case was his sentencing of Saavedra. In other words, if Saavedra were successful in his appeal, the remedy would be to remand the case to the district court for resentencing before a different judge. In fact, that is the very remedy he seeks in his opening brief. Aplt. Br. at 1, 23, 27. Thus, there is no question that the appeal concerns Saavedra's sentence. As a result, the appeal squarely falls within the scope of the appellate waiver provision.

2. *Knowing and Voluntary*

In determining whether a defendant entered into a plea agreement knowingly and voluntarily, we first look to see "whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily"; if so, we then look "for an adequate Federal Rule of Criminal Procedure 11 colloquy." *Hahn*, 359 F.3d at 1325. Here, the appellate waiver provision of the parties' written plea agreement expressly states that "Defendant knowingly waives the right to appeal [his] conviction(s) and any sentence." Supp. R. at 18. The plea agreement also states that Saavedra's "plea of guilty is freely and voluntarily made and is not the result of force, threats, or promises." *Id*. at 19. In turn, the district court, in accepting the plea, specifically addressed the appellate waiver including asking Saavedra if he understood the appellate rights he was giving up and whether he was willing to give up those rights. Following the questioning of

2

Saavedra, the district court expressly found that Saavedra's "plea [wa]s knowing and voluntary and supported by sufficient facts." R., Vol. III at 26. In sum, the record firmly establishes that the appellate waiver was knowing and voluntary.

### 3. *Miscarriage of Justice*

"[E]nforcement of an appellate waiver does not result in a miscarriage of justice unless enforcement would result in one of the four situations enumerated in [*United States v.*] *Elliott*." *Hahn*, 359 F.3d at 1327 (citing *United States v. Elliott*, 264 F.3d 1171, 1173 (10th Cir. 2001)). Those four situations are "(1) where the district court relied on an impermissible factor such as race, (2) where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, (3) where the sentence exceeds the statutory maximum, or (4) where the waiver is otherwise unlawful." *Id.*

There is no question that the first three situations are inapplicable here. That leaves only the possibility that the appellate waiver provision in Saavedra's plea agreement "is otherwise unlawful."

To satisfy the "otherwise unlawful" exception, the error "must seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Id.* (cleaned up). In addition, we have held that the fourth exception "*looks to whether 'the waiver is otherwise unlawful,'* not to whether another aspect of the [sentencing] proceeding may have involved legal error.'" *United States v. Holzer*, 32 F.4th 875, 887 (10th Cir. 2022) (quoting *United States v. Smith*, 500 F.3d 1206, 1213 (10th Cir. 2007) (emphasis added)).

3

In attempting to satisfy this standard, Saavedra argues that enforcement of the appellate waiver would implicate "the public's acceptance of judicial decisionmaking," would "fail to 'satisfy the appearance of justice,'" would "undermin[e] the public's confidence in the judicial process," and would create doubts about impartiality and the appearance of impropriety. Aplt. Reply Br. at 26–27. But these arguments really focus on the merits of the legal error that he seeks to raise, and do not, in my view, implicate the lawfulness of the appellate waiver. I therefore conclude that Saavedra has failed to establish that the appellate waiver contained in his plea agreement is "otherwise unlawful."