7 F.3d 1331
 UNITED STATES of America, Plaintiff-Appellee,v.Linda J. SYKES, also known as Lynda J. Young, also known asLynda J. Jefferson, also known as Lyndra J. Sykes,also known as Lyndra J. Young,Defendant-Appellant.
 No. 92-2984.
 United States Court of Appeals,Seventh Circuit.
 Argued April 2, 1993.Decided Oct. 22, 1993.
 
 John W. Vaudreuil, Asst. U.S. Atty., Timothy O'Shea (argued), Madison, WI, for plaintiff-appellee.
 Bruce A. Kittle, Michael, Best & Friedrich, Madison, WI (argued), for defendant-appellant.
 Before CUDAHY and ROVNER, Circuit Judges, and REAVLEY, Senior Circuit Judge.*
 ILANA DIAMOND ROVNER, Circuit Judge.
 
 
 1
 Linda Sykes pled guilty to one count of a four-count indictment charging her with falsely representing a social security number with intent to deceive in violation of 42 U.S.C. § 408(a)(7)(B). The indictment charged that Sykes used false social security numbers four times during a thirty-two month period to obtain credit from various sources. The district court accepted Sykes' plea and dismissed the remaining three counts on the government's motion. In sentencing Sykes, however, the district court found that the acts charged in the dismissed counts were "relevant conduct" under section 1B1.3(a)(2) of the Sentencing Guidelines, and the court enhanced Sykes' offense level and criminal history category accordingly. The court then sentenced Sykes to the maximum period of incarceration under the enhanced Guidelines range. Sykes does not challenge on appeal the inclusion of the count II and count III acts as relevant conduct, but she argues that the acts charged in count IV do not so qualify. We agree and therefore vacate Sykes' sentence and remand for resentencing.
 
 I. FACTS
 
 2
 The indictment charged four separate violations of section 408(a)(7)(B). Count I, to which Sykes pled guilty, involved the purchase of furniture from the A-1 Furniture Company in Madison, Wisconsin. On June 10, 1988, Sykes applied for and obtained credit from AVCO Financial Services ("AVCO") to finance this purchase. She applied under the name Lyndra J. Sykes and listed her social security number as vcg-ml-ngon when her social security number actually is cjj-kd-hgxd AVCO provided financing to Sykes in the amount of $1,599.33, and it subsequently provided an additional $634.95 in credit based upon the June 10 application.
 
 
 3
 Count II charged that in February of the following year, Sykes applied to CUNA Credit Union ("CUNA") of Madison, Wisconsin, for a VISA credit card. On this application, she used the name Lyndra J. Young and provided the same false social security number. CUNA denied Sykes' application.
 
 
 4
 In December 1989, Sykes applied for and obtained a $1,885.73 loan from ITT Financial in Madison. She used the name Lynda Sykes Young and once again the same false social security number. This was charged in count III of the indictment.
 
 
 5
 Count IV relates to the conduct at issue on this appeal. On February 5, 1991, almost thirty-two months after the act charged in count I and fourteen months after that charged in count III, Sykes applied to Capitol Ford in Madison for a $9,995.00 automobile loan. She submitted the application in the name of Lynda J. Jefferson, claiming that she was married to a Mark Jefferson, and she used a new but still false social security number--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.1 Sykes' mother agreed to cosign for the loan. CUNA initially denied the application, but the Ford Motor Credit Union ultimately approved the loan, enabling Sykes to purchase the automobile.
 
 
 6
 Two weeks later, on February 19, 1991, Sykes filed a bankruptcy petition in the Western District of Wisconsin using the name Lynda J. Sykes Young and her actual social security number.
 
 
 7
 The district court accepted Sykes' guilty plea on count I and ordered the probation officer to prepare a Presentence Report ("PSR"). In the PSR, the probation officer calculated Sykes' total offense level at seven and her criminal history category at two, resulting in a sentencing range of two to eight months' incarceration.2 The probation officer considered the conduct charged in counts II and III to be "relevant conduct" under U.S.S.G. § 1B1.3(a)(2) because it was part of the "same course of conduct or common scheme or plan as the offense of conviction." However, the probation officer recommended that the acts charged in count IV not be considered "relevant conduct":
 
 
 8
 It could be argued that the conduct embodied in Count 4 of the Indictment was also part of the same course of conduct or common scheme or plan as the offense of conviction because Ms. Sykes again used a name other than her own and a false social security number to obtain credit. While she had a similar modus operandi, we do note a significant period of time had elapsed since conduct in Count 3. We do not believe the conduct in Count 4 is relevant conduct as defined in § 1B1.3(a)(2) and therefore the loss to Ford Motor Credit Company is not included in the guideline computation.
 
 
 9
 (PSR p 26.) Neither the government nor Sykes challenged the probation officer's relevant conduct recommendations. In fact, the government made no objections to the PSR.
 
 
 10
 The district court nonetheless rejected the probation officer's recommendation and held that the count IV acts were relevant conduct under section 1B1.3(a)(2). The court discounted the probation officer's observation that a "significant period of time had elapsed," noting that eighteen months separated the acts charged in counts I and III, whereas only fourteen months separated those charged in counts III and IV. (Aug. 11, 1992 Tr. at 27-28.) The district court also found that count IV was clearly part of the same plan or scheme as the earlier acts--"a plan of fraud and deceit, a plan which was entered into two weeks before a bankruptcy petition was filed." (Id. at 29.)3 The inclusion of count IV as relevant conduct added one point to Sykes' total offense level and two points to her criminal history category,4 raising the sentencing range to between six and twelve months. The government recommended a sentence at the low end of this range, but the district court sentenced Sykes to the maximum term of twelve months, to be followed by three years of supervised release. The district court also ordered Sykes to pay monthly restitution to AVCO, ITT Financial, and Ford.
 
 
 11
 Sykes filed a notice of appeal as well as a motion for release pending appeal with the district court. Her appointed counsel also moved to withdraw, and in connection with that motion, Sykes submitted an affidavit indicating her belief that the district court was prejudiced against her based on comments the court made at the change of plea hearing. The district court permitted counsel to withdraw and construed Sykes' affidavit as a motion for recusal pursuant to 28 U.S.C. § 144, which the court denied. The court also denied Sykes' motion for release pending appeal, but when Sykes renewed her request here, we ordered her released during the pendency of this appeal. Regrettably, Sykes then violated the terms of her conditional release when on June 5, 1993, she was arrested after allegedly stabbing her fifteen-year-old nephew in the shoulder during an argument. When advised of her subsequent arrest, the district court revoked her conditional release and ordered that she be detained pending appeal.
 
 II. DISCUSSION
 
 12
 A. "Relevant Conduct"
 
 
 13
 Our review of a district court's sentencing decision is deferential. We will uphold a Guidelines sentence "so long as the district court correctly applied the Guidelines to findings of fact that were not clearly erroneous." United States v. Duarte, 950 F.2d 1255, 1262 (7th Cir.1991), cert. denied, --- U.S. ----, 113 S.Ct. 174, 121 L.Ed.2d 120 (1992); see also United States v. Rivera, 6 F.3d 431, 444 (7th Cir.1993). The determination that uncharged activity constitutes "relevant conduct" under section 1B1.3(a)(2) is a finding of fact, which we will not disturb unless it is clearly erroneous. United States v. Nunez, 958 F.2d 196, 198 (7th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 168, 121 L.Ed.2d 115 (1992); see also United States v. Chatman, 982 F.2d 292, 294 (8th Cir.1992); United States v. Hahn, 960 F.2d 903, 907 (9th Cir.1992); United States v. Kappes, 936 F.2d 227, 229 (6th Cir.1991). A factual finding is clearly erroneous " 'when although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed.' " United States v. D'Antoni, 856 F.2d 975, 978 (7th Cir.1988) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).
 
 
 14
 Guidelines section 1B1.3(a)(2) directs that for "offenses of a character for which § 3D1.2(d) would require grouping of multiple counts," a defendant's base offense level and specific offense characteristics should take account of "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." In United States v. White, 888 F.2d 490, 497 (7th Cir.1989), we explained that where
 
 
 15
 the Guidelines provide tables that cumulate the amount sold or stolen, any acts that "were part of the same course of conduct or common scheme or plan as the offense of conviction" should be included in the computation of the amount on which the offense level depends, whether or not the defendant was convicted of selling or stealing these additional amounts.
 
 
 16
 See also United States v. Dawson, 1 F.3d 457, 464 (7th Cir.1993). Section 1B1.3(a)(2) thus "is designed to take account of 'a pattern of misconduct that cannot readily be broken into discrete, identifiable units that are meaningful for purposes of sentencing.' " United States v. Mullins, 971 F.2d 1138, 1143 (4th Cir.1992) (quoting U.S.S.G. § 1B1.3 Background Comment); see also Hahn, 960 F.2d at 909;5 United States v. Jones, 948 F.2d 732, 737 (D.C.Cir.1991); United States v. Wood, 924 F.2d 399, 403 (1st Cir.1991).
 
 
 17
 Because Guidelines section 2F1.1(b)(1) sets the base offense level for cases involving fraud and deceit according to the amount of the loss, multiple fraud convictions would be grouped together under section 3D1.2(d). See Mullins, 971 F.2d at 1143; Kappes, 936 F.2d at 229 n. 2. Section 1B1.3(a)(2), in turn, permits the inclusion of losses attributable to other acts that are "part of the same course of conduct or common scheme or plan as the offense of conviction" even if those acts went uncharged or if charges were filed but were ultimately dismissed. See United States v. Pollard, 965 F.2d 283, 287 (7th Cir.1992). That section would therefore apply to Sykes' count IV conduct if it was "part of the same course of conduct or common scheme or plan" as count I--the count of conviction. The district court found that it was and enhanced Sykes' offense level and criminal history category accordingly.
 
 
 18
 Sykes first challenges the factual basis for the charge in count IV, contending that not she but her mother actually provided the false social security number to the Ford representative. This argument need not detain us long. The district court did not believe Sykes' explanation but found that the circumstances indicated that Sykes in fact had provided the false social security number. For sentencing purposes, the government need only establish the facts on which it relies by a preponderance of the evidence. Duarte, 950 F.2d at 1263. Because the government established a sufficient factual basis for the acts charged in count IV and because the district court's assessment of Sykes' credibility was not clearly erroneous, we consider whether those acts amount to "relevant conduct" under section 1B1.3(a)(2).
 
 
 19
 In making that assessment, we consider "the nature of the defendant's acts, [her] role, and the number and frequency of repetitions of those acts, in determining whether they indicate a behavior pattern." United States v. Santiago, 906 F.2d 867, 872 (2d Cir.1990); see also United States v. Crawford, 991 F.2d 1328, 1331 (7th Cir.1993); Mullins, 971 F.2d at 1144; Hahn, 960 F.2d at 910. In other words, we look to the similarity, regularity, and temporal proximity of the uncharged acts to the offense of conviction. United States v. Cedano-Rojas, 999 F.2d 1175, 1180 (7th Cir.1993); see also Chatman, 982 F.2d at 294; United States v. Bethley, 973 F.2d 396, 401 (5th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1323, 122 L.Ed.2d 709 (1993); Mullins, 971 F.2d at 1144; Hahn, 960 F.2d at 910. Although we " 'cannot formulate precise recipes or ratios in which these components must exist in order to find conduct relevant,' a district court should 'look for a stronger presence' of at least one of the components if one of the components is not present at all." Mullins, 971 F.2d at 1144 (quoting Hahn, 960 F.2d at 910); see also Bethley, 973 F.2d at 401. For example, where temporal proximity is absent, a stronger showing of both regularity and similarity is required. Hahn, 960 F.2d at 910.6 At the same time, when evaluating a series of temporally remote offenses, we must be mindful of White's directive that section 1B1.3(a)(2) not apply to "[o]ffenses of the same kind, but [that] are not encompassed in the same course of conduct or plan." 888 F.2d at 500 (emphasis in White ); see also Duarte, 950 F.2d at 1264. In other words, "it is not enough that the extraneous conduct merely amounts to the same offense as the offense for which the defendant was convicted." Hahn, 960 F.2d at 910. Rather, in that case, a court must consider whether there are distinctive similarities between the offense of conviction and the remote conduct that signal that they are part of a single course of conduct rather than isolated, unrelated events that happen only to be similar in kind. Id. at 911.
 
 
 20
 The government concedes that the acts in question here were not close in time so that it must rely primarily on regularity and similarity to prove that the offenses were part of the same course of conduct or a common plan. The fact that fourteen months elapsed between the credit applications underlying counts III and IV is certainly significant, and our concern with that lengthy interval is not mollified by the fact that the conduct charged in count III occurred eighteen months after that in count I.7 See, e.g., Mullins, 971 F.2d at 1144 (temporal proximity "extremely weak" where uncharged conduct occurred six months prior to offense of conviction); Hahn, 960 F.2d at 911 (evidence of specific similarity and regularity important where period of five months separated drug transactions); Jones, 948 F.2d at 737-38 (embezzlement that occurred over one year before mailbag fraud not part of same course of conduct or common plan); cf. Cedano-Rojas, 999 F.2d at 1180-81 (drug transactions sufficiently similar to constitute relevant conduct although occurring two years before offense of conviction). The lengthy time interval here tends to indicate conduct that can easily be separated into "discrete, identifiable units," rather than behavior that is part of the same course of conduct or common scheme or plan. See U.S.S.G. § 1B1.3 Background Comment.
 
 
 21
 The government attempts to surmount the temporal proximity problem by emphasizing the similarity of the conduct and the regularity with which it occurred. It suggests that whenever Sykes needed money over a thirty-two month period, she responded in the same way--by using a false social security number to apply for credit. The government argues that her similar motivation to obtain credit to purchase items links the four credit applications in the same course of conduct or common scheme. We think this theory--which seemingly would encompass any similar attempts to obtain money or credit, no matter how irregular or remote in time--sweeps too broadly, for it would encompass activity of the "same kind" even if that activity may not be part of a common scheme or plan. See White, 888 F.2d at 500. In short, the government's theory describes Sykes' conduct "at such a level of generality as to eviscerate the evaluation" of whether count IV is part of the same course of conduct or common scheme or plan as the offense of conviction. Mullins, 971 F.2d at 1145.8
 
 
 22
 Moreover, we think that Sykes' acts were not sufficiently repetitive to enable us to call her conduct "regular." "Regularity"--which refers to repeated acts or events that take place "[a]t fixed and certain intervals" or "[i]n accordance with some consistent or periodical rule or practice" (Black's Law Dictionary 1286 (6th ed. 1990) (defining "regularly"))--is relevant to the section 1B1.3(a)(2) inquiry because it indicates acts deriving from a common origin or plan. Direct evidence of such a plan is typically absent, and we will not infer a plan unless the circumstances indicate that the uncharged conduct was somehow linked to the offense of conviction. See Kappes, 936 F.2d at 231. Repeated, regular acts or offenses occurring at fixed and certain intervals (e.g., once a month or at a specific time each year) may suggest a plan linking the first offense to the last, whereas sporadic acts over an extended time period generally do not permit the inference of a common scheme or plan but indicate independent acts that may lack the necessary link. Because Sykes' offenses here occurred irregularly and infrequently, we cannot infer that they are linked by a common plan.9
 
 
 23
 With both temporal proximity and regularity missing, only similarity remains. Although we do not foreclose the possibility that offenses might be so similar that they could be considered "relevant conduct" even in the absence of both temporal proximity and regularity (see Cedano-Rojas, 999 F.2d at 1180; Mullins, 971 F.2d at 1144), that is not the case here, where the acts charged in count IV differ in significant respects from the earlier conduct. Sykes applied for credit from different companies; she used different names and social security numbers; Sykes' mother cosigned only the auto application; and she attempted to purchase different products. See id. at 1145. Although these distinctions would be less significant if temporal proximity and/or regularity existed, they foreclose the possibility that any similarities to Sykes' earlier conduct would by themselves suffice to establish that count IV was part of "the same course of conduct or a common plan or scheme."
 
 
 24
 The district court's finding that the Ford credit application underlying count IV was relevant conduct under section 1B1.3(a)(2) was therefore clearly erroneous. On remand, the district court may consider the count IV conduct only in determining an appropriate sentence within the designated Guidelines range, but may not use it in calculating the offense level or criminal history category. See Mullins, 971 F.2d at 1146; Wood, 924 F.2d at 405.
 
 B. Recusal
 
 25
 Sykes also argues that the district court should have recused itself because the court's comments at Sykes' plea hearing evidenced actual prejudice that affected her sentence. Because we are remanding the case for resentencing, it is incumbent on us to consider this argument.
 
 
 26
 The allegations of prejudice stem from the district court's response to a question raised by Sykes' former counsel about the particular section of the Sentencing Guidelines that would be used to calculate Sykes' base offense level. The district court warned that it would not accept the plea if the parties had stipulated to a particular Guidelines application. (See June 12, 1992 Tr. at 17-18.) After the government attorney assured the district court that no such agreement had been made, the court stated:
 
 
 27
 Well, I've made it clear, never as clear as I've had to make at this--as I have at this time, but I think that the best way to proceed at this time is not to accept the plea agreement because I do know the concerns--in fact, I read an article written by someone I believe from Mr. Feingold's [Sykes' attorney at the time] office by the name of Bates who suggested the concerns he had with the manner in which the sentencing guidelines operate in the Western District of Wisconsin, and I take judicial notice of that. And I do see that this is an attempt to get around the sentencing guidelines, and I'm not going to accept it.
 
 
 28
 (Id. at 18-19.) The district court ultimately accepted Sykes' plea, after satisfying itself that the plea was not based on a representation that a particular section of the Guidelines would apply. The court sentenced Sykes approximately two months later. Sykes' counsel then moved to withdraw, and Sykes submitted her affidavit suggesting that the district court was biased because of the comments the court made at the guilty plea hearing. (R. 16.) The district court construed Sykes' affidavit as a request for recusal under 28 U.S.C. § 144, which requires recusal "if a party files a timely and sufficient affidavit that the judge has 'a personal bias or prejudice' against [her]."10 United States v. Balistrieri, 779 F.2d 1191, 1199 (7th Cir.1985). The district court denied the motion on the grounds that it was untimely, that it was not accompanied by a certificate of counsel as required by the statute, and that the court was not prejudiced against Sykes. (R. 21.) We review that determination de novo. Balistrieri, 779 F.2d at 1200.
 
 
 29
 Recusal under section 144 is mandatory once a party submits a timely and sufficient affidavit and her counsel presents a certificate stating that the affidavit is made in good faith. Id. at 1199-1200. A section 144 affidavit is not timely unless filed " 'at the earliest moment after [the movant acquires] knowledge of the facts demonstrating the basis for such disqualification.' " United States v. Barnes, 909 F.2d 1059, 1071 (7th Cir.1990) (quoting United States v. Patrick, 542 F.2d 381, 390 (7th Cir.1976), cert. denied, 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977)). In passing on the legal sufficiency of the affidavit, the court must assume the truth of its factual assertions even if it "knows them to be false." Balistrieri, 779 F.2d at 1199. At the same time, the facts averred must be sufficiently definite and particular to convince a reasonable person that bias exists; simple conclusions, opinions, or rumors are insufficient. Id. The affidavit also must show "that the bias is personal rather than judicial, and that it stems from an extrajudicial source--some source other than what the judge has learned through participation in the case." Id.; see also United States v. Bond, 847 F.2d 1233, 1241 (7th Cir.1988). Because the statute "is heavily weighed in favor of recusal," its requirements are to be strictly construed to prevent abuse. Balistrieri, 779 F.2d at 1199.
 
 
 30
 Sykes' affidavit fails to satisfy the stringent requirements of section 144 in a number of respects. First, the affidavit was untimely. Sykes' claim was based on the district court's remarks at the June 12, 1992 change of plea hearing. Yet the affidavit was not filed until August 19, after Sykes already had been sentenced. Two months after the allegedly prejudicial statement is certainly not "at the earliest possible moment" after discovery of the prejudice. See Barnes, 909 F.2d at 1071-72.11
 
 
 31
 Moreover, the averments in Sykes' affidavit focused more on the district court's alleged bias against her counsel and his law firm than against Sykes herself. Indeed, Sykes acknowledges that she repeatedly "expressed her belief to counsel and others[ ] that the Trial Judge was prejudiced against her as expressed in the Court's statements about opinions expressed by members of the law firm of her counsel." (R. 16 p 3.) The prejudice alleged is therefore derivative of a purported bias against counsel and his law firm. Although we have not yet considered the question, other circuits have held that bias against counsel alone is insufficient because "section 144 makes clear on its face[ ] that '[a]ntipathy to an attorney is insufficient grounds for disqualification of a judge because it is not indicative of extrajudicial bias against a "party." ' " Souder v. Owens-Corning Fiberglas Corp., 939 F.2d 647, 653 (8th Cir.1991) (quoting Gilbert v. City of Little Rock, 722 F.2d 1390, 1398 (8th Cir.1983), cert. denied, 466 U.S. 972, 104 S.Ct. 2347, 80 L.Ed.2d 820 (1984)); see also Hinman v. Rogers, 831 F.2d 937, 939 (10th Cir.1987). Souder acknowledged, however, that in some circumstances, "bias against an attorney can reasonably be imputed to a party" (939 F.2d at 653), and we agree. But the party seeking recusal on that theory must allege facts suggesting that the alleged bias against counsel might extend to the party. Id. at 653 n. 6; see also United States v. Jacobs, 855 F.2d 652, 656 n. 2 (9th Cir.1988) (facts must suggest such a "virulent personal bias or prejudice against the attorney as to amount to a bias against the party"); United States v. Burt, 765 F.2d 1364, 1368 (9th Cir.1985). The allegations to that effect here are merely conclusory and insufficient to require recusal under section 144.
 
 
 32
 In any event, any prejudice here would presumably have been alleviated by the appointment of new counsel. This may explain why the affidavit was not submitted in connection with a motion for recusal under section 144, but rather a motion for the withdrawal of Sykes' former counsel. It is apparently for this reason that the affidavit was not accompanied by "a certificate of counsel of record stating that it is made in good faith," as required by the statute.
 
 
 33
 Given the procedural and substantive shortcomings of Sykes' affidavit, recusal was not required. The case will be remanded to Judge Shabaz for resentencing in accordance with this opinion.
 
 III. CONCLUSION
 
 34
 For the foregoing reasons, we vacate Sykes' sentence and remand to the district court for resentencing.
 
 
 35
 VACATED AND REMANDED.
 
 
 
 *
 The Honorable Thomas M. Reavley, Senior Circuit Judge for the Fifth Circuit, sitting by designation
 
 
 1
 This number actually belongs to Michael Gifford, and there is no indication in the record that Sykes knows Gifford. Sykes maintained that her mother had provided this information to the Ford representative and that she believed the number belonged to one of her sisters. The district court did not find this explanation credible
 
 
 2
 The offense level was calculated as follows: Guidelines section 2F1.1(a) established a base offense level of six. Considering the acts charged in counts II and III of the indictment as "relevant conduct" under section 1B1.3(a)(2) added one level because the amount of the loss was between $2,000 and $5,000. U.S.S.G. § 2F1.1(b)(1)(A) & (B). Two additional levels were added because the offense involved more than minimal planning (U.S.S.G. § 2F1.1(b)(2)), resulting in an adjusted offense level of nine. The probation officer recommended a two-level reduction for acceptance of responsibility under section 3E1.1, bringing the total offense level to seven
 
 
 3
 Although the court noted that for sentencing purposes it need only make such a finding by a preponderance of the evidence, it nonetheless found it
 absolutely clear not only by a preponderance of the evidence but beyond a reasonable doubt ... that Count 4 is relevant conduct. When examining the presentence report, the Court attempted to determine why it would not be relevant conduct and [found] there were no reasons whatsoever to disregard Count 4 as relevant conduct.
 (Id. at 27.)
 
 
 4
 The criminal history category changed because the conduct alleged in count IV was committed while Sykes was on probation for an earlier offense. See U.S.S.G. § 4A1.1(d)
 
 
 5
 In Hahn, the Ninth Circuit observed that "when illegal conduct does exist in 'discrete, identifiable units' apart from the offense of conviction, the Guidelines anticipate a separate charge for such conduct." 960 F.2d at 909
 
 
 6
 In Cedano-Rojas, we explained that "[a]lthough temporal proximity is a significant consideration in finding a course of conduct, a lapse of time between the prior conduct and the charged offense is not necessarily dispositive." 999 F.2d at 1180
 
 
 7
 Sykes conceded below that count III constituted relevant conduct, and we therefore express no opinion on that here. Yet, that concession certainly does not foreclose the argument that count IV was too remote
 
 
 8
 To say that Sykes responded to the same circumstances in a similar way over a thirty-two month period is to say only that she may have committed discrete, identifiable acts that are similar to the offense of conviction, not that those acts were part of the same course of conduct or a common scheme or plan
 
 
 9
 In finding that the count IV conduct was part of the same scheme or plan as the offense of conviction, the district court stated:
 It is the same plan. It was a plan of fraud and deceit, a plan which was entered into two weeks before a bankruptcy petition was filed.
 (Aug. 11, 1992 Tr. at 29.) The district court's rationale proves our point because it suggests that Sykes only devised the "count IV plan" shortly before that conduct occurred, two weeks before she filed a petition in bankruptcy. To constitute relevant conduct under section 1B1.3(a)(2), however, the plan not only must have predated the count IV conduct, but also must have encompassed the earlier conduct, some of which occurred thirty-two months earlier. The district court pointed to nothing that would indicate the existence of such a plan.
 
 
 10
 Section 144 provides in full:
 Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
 The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.
 28 U.S.C. § 144.
 
 
 11
 Sykes asserts that she had good cause for failing to file the affidavit earlier because the impact of the district court's prejudice was felt only at sentencing, when the court imposed the maximum period of incarceration under an enhanced sentencing range. Although section 144 permits late filings upon a showing of good cause, Sykes has not established that here because the asserted bias relates only to the district court's statements at the plea hearing. We cannot permit parties to postpone filing affidavits until after an alleged prejudice manifests itself without eviscerating the timing requirement altogether