89 F.3d 839
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jackie H. TURNER, Defendant-Appellant.
 No. 94-3082.
 United States Court of Appeals, Seventh Circuit.
 Submitted June 10, 1996.*
Decided June 25, 1996.
Rehearing Denied Aug. 2, 1996.
 
 Before BAUER, EASTERBROOK and DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 Jackie Turner was convicted of sixteen counts of bank fraud, 18 U.S.C. § 1344, and was sentenced to concurrent terms of sixty months on Counts 1-12 and 14-15 and 120 months on Counts 13 and 16. He appeals his convictions and sentence.[1] For the following reasons, we affirm.
 
 
 2
 A jury convicted Turner of defrauding Citicorp Savings of America and First National Bank of Chicago in an elaborate check-kiting scheme. He paid people to deposit checks for him in their accounts, to let him use their ATM cards to make deposits, or to open new accounts in fictitious names. He then deposited checks that were stolen, forged, or from accounts with insufficient funds, and instructed his accomplices to withdraw cash from branch banks before the bank discovered that the checks would not clear. Between 1985 and 1993, Turner used at least forty different bank accounts, attempting to defraud Citibank and First Chicago of $596,192 and causing actual losses of over $200,000. Counts 1-12 involved conduct prior to the effective date of the Sentencing Guidelines, but Counts 13-16 took place after that date.[2]
 
 
 3
 Before trial, the government discovered that one of Turner's accomplices (Flowers) had lied to the grand jury that indicted Turner. It dismissed the counts connected to Flowers and, to avoid possible jury confusion about the missing counts at trial, it later asked a separate grand jury that had never heard Flowers' testimony to reindict Turner. Turner protested the government's action, claiming "grand jury abuse" and "prosecutorial misconduct," and moved to dismiss the indictment. The court denied the motion and granted the government's motion in limine to bar the defendant (who was allowed to act as "co-counsel" and thus file motions and address the jury) from referring to the subject in front of the jury. Turner, who resubmitted his motion the first day of trial and protested the court's decision not to rule upon it immediately, disregarded the court's directive, and when the court ordered him to abide by it, he stated that if he could not raise the subject before the jury he would prefer to be absent from the courtroom. The court directed him to attend his trial, but Turner said that he would not be able to refrain from addressing the jury if he were present in court,[3] and repeatedly asked to be excused. The court ruled that Turner would be kept in the holding cell adjacent to the courtroom and had a speaker system installed so he could hear the proceedings. Turner refused to return for any of the trial despite the district court's repeated requests. He also directed his attorney, who was present in court throughout the trial, not to participate in the proceedings.
 
 
 4
 Turner, proceeding pro se on appeal, raises several issues regarding his trial and sentencing. He challenges 1) the failure to grant his request to subpoena witnesses; 2) the denial of his motion to dismiss the indictment for grand jury abuse and prosecutorial misconduct; 3) the denial of his motion to inspect the grand jury minutes; 4) the government's right to file a superseding indictment to remove counts resulting from perjured testimony; 5) the prosecution's introduction of perjured testimony at trial; and 6) the application of the Sentencing Guidelines.
 
 I. Subpoenas
 
 5
 "Federal Rule of Criminal Procedure 17(b) requires a court to subpoena witnesses for indigent defendants when 'the presence of the witnesses is necessary to an adequate defense.' " United States v. Chapman, 954 F.2d 1352, 1362 (7th Cir.1992). The district court has "wide discretion" in deciding whether to issue subpoenas requested under Rule 17(b). Id. Although the Sixth Amendment right to compulsory process and the Fifth Amendment right to due process protect a defendant's ability to procure the attendance of witnesses, there is no constitutional violation unless "the potential witnesses could have provided relevant and material testimony for the defense." United States v. Verkuilen, 690 F.2d 648, 659 (7th Cir.1982).
 
 
 6
 Turner moved to subpoena witnesses, submitting a list of more than fifty witnesses and a short statement about their testimony. Because Turner's submission did not make clear how the proposed witnesses would assist in his defense, the district court denied Turner's motion, stating, "you haven't made a sufficient showing here to justify subpoening all these people, and since you haven't made such a showing, I am going to deny your motion. But I do so without prejudice ... and if it appears to me that if any one of these people should be reasonably called for your benefit or defense, I will make arrangements to have them produced." Tr. Vol. 5 at 10. The court directed Turner to renew his motion before the trial if he could articulate a basis for calling the witnesses. When the subject was discussed just before trial, the court stated, "So I am not refusing to allow you to subpoena witnesses, don't misunderstand my ruling. What I ruled was that I saw no reason, based on what was presented to me, to ask the United States Marshal to go out and subpoena 45 witnesses for the defense in this case." Tr. Vol. 7 at 42. Turner did not renew his motion and rested his case without calling any witnesses.
 
 
 7
 We find no abuse of discretion in the district court's action, as Turner did not make the requisite showing that the witnesses he desired would aid in his defense. Moreover, the district court merely denied Turner's original motion. It specifically informed him that it was not refusing to allow him to call witnesses. Contrary to his argument before this court, Turner was not denied the right to present his defense.
 
 II. Grand Jury Issues
 
 8
 We review a district court's ruling on motions in limine for an abuse of discretion. United States v. Guyton, 36 F.3d 655, 660 (7th Cir.1994). First, Turner claims that the district court erred by refusing to rule on his motion regarding grand jury abuse and prosecutorial misconduct. The district court, however, did rule on the issue prior to trial: it denied his first motion, then took his second motion under advisement before denying it after trial. We find no abuse of discretion in first granting the government's motion and then refusing to delay the trial to hold an evidentiary hearing, as there is no evidence in the record of either prosecutorial misconduct or grand jury abuse in this case.
 
 
 9
 Second, the district court did not err in denying Turner's request for "grand jury minutes." According to the government, Turner's counsel was given a copy of the testimony heard by the grand jury,[4] and therefore his request was moot.
 
 III. Trial Testimony
 
 10
 Turner asserts that his conviction is invalid because prosecutors knowingly introduced perjured testimony. Specifically, Turner challenges as incredible and physically impossible the testimony of Barbara Stewart-Hill that she and Turner traveled around Chicago and withdrew money from several branch banks during a short period of time, and he notes the probable biases of Stewart-Hill and other government witnesses.
 
 
 11
 Turner had the opportunity to cross-examine the prosecution's witnesses and elicit this information in front of the jury, an opportunity he declined. Because none of the information he seeks to submit to this court is part of the record, it will not be considered on appeal.
 
 IV. Sentencing Guidelines
 
 12
 Finally, Turner challenges the trial court's application of the Sentencing Guidelines. He argues that U.S.S.G. § 1B1.3(a)(2) was improperly applied to this case and that, because the counts were separate acts and some had occurred before the Guidelines became applicable, the district court should not have grouped them under U.S.S.G. § 3D1.2 or enhanced his offense level 10 points under U.S.S.G. § 2F1.1. "On review, a district court's sentencing decisions will be 'upheld so long as the Guidelines were correctly applied to findings of fact that were not clearly erroneous.' " United States v. Gregory, 74 F.3d 819, 823 (7th Cir.1996) (quoting United States v. Vopravil, 891 F.2d 155, 157 (7th Cir.1989)).
 
 
 13
 Section 1B1.3(a)(2) specifically directs that, for offenses that should be grouped under § 3D1.2(d), the court should take account of all relevant conduct (acts that are "part of the same course of conduct or common scheme or plan as the offense of conviction"). These bank fraud offenses were appropriate for grouping under § 3D1.2(d), as that section specifically includes fraud offenses under § 2F1.1. United States v. Sykes, 7 F.3d 1331, 1336 (7th Cir.1993). To determine what acts constitute relevant conduct, the court must consider " 'the nature of the defendant's acts, [his] role, and the number and frequency of repetitions of those acts, in determining whether they indicate a behavior pattern.' " Id. (quoting United States v. Santiago, 906 F.2d 867, 872 (2d Cir.1990)); see also U.S.S.G. § 1B1.3, comment n. 9(A) (offenses must "be substantially connected to one another by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi "). A lapse of time is not necessarily dispositive. Sykes, 7 F.3d at 1336 n. 6; see also United States v. Morris, 76 F.3d 171, 174-75 (7th Cir.1996); United States v. Cedano-Rojas, 999 F.2d 1175, 1180 (7th Cir.1993). In this case, Turner defrauded the same two victims, for the same purpose, in essentially the same manner and with some of the same accomplices. Despite the hiatus in the defendant's activities, we cannot declare clearly erroneous the district court's determination that these offenses qualified as relevant conduct.
 
 
 14
 Because these offenses were part of a common scheme or plan and grouped together, the district court correctly enhanced Turner's base offense level by 10 points to account for the total impact of the scheme. Although part of the charged conduct occurred before the effective date of the Sentencing Guidelines, the court is allowed to take pre-Guidelines conduct into consideration in imposing sentences for Guidelines offenses. United States v. Ewings, 936 F.2d 903, 910 (7th Cir.1991); United States v. Watford, 894 F.2d 665, 668 n. 2 (4th Cir.1990). Further, it may base the calculations on the amount of the intended loss rather than a lesser loss actually sustained. United States v. Johnson, 16 F.3d 166, 171-72 (7th Cir.1994); U.S.S.G. § 2F1.1, comment n. 7.
 
 
 15
 Turner's conclusory allegation that he was charged with separate counts but sentenced for a conspiracy is meritless. He was charged with separate executions of a single continuing scheme and sentenced accordingly.
 
 
 16
 AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary; accordingly, the appeal is submitted on the briefs and the record. See Fed.R.App.P. 34(a); Cir.R. 34(f)
 
 
 [1]
 Turner does not appeal an additional consecutive sentence of four months imposed for contempt of court
 
 
 [2]
 18 U.S.C. § 1344 was revised effective August 9, 1989 to increase the maximum punishment from five years to twenty years, and amended again effective November 29, 1990 to allow a thirty-year period of imprisonment. Only the conduct involved with Counts 13 and 16, however, took place after the 1989 amendment
 
 
 [3]
 He stated that the court would have to gag and handcuff him to keep in the courtroom and silent. The court declined to do so in front of the jury
 
 
 [4]
 Turner included copies of some of this testimony in the appendix to his appellate brief