UNITED STATES of America, Plaintiff,

v.

Hollis Earl ROBERTS, Defendant.

No. CR–95–35–S.

United States District Court,
E.D. Oklahoma.

Nov. 29, 1996.

John W. Raley, Jr., U.S. Attorney, Linda A. Epperley, Sheldon Sperling, Asst. U.S. Attorneys, Muskogee, OK, for Plaintiff.

Burck Bailey, Oklahoma City, OK, Warren F. Bickford, IV, Oklahoma City, OK, Eddie Harper, McAlester, OK, for Bureau of Nat. Affairs.

### ORDER DENYING THE GOVERNMENT'S MOTION FOR RECUSAL

SEAY, District Judge.

On September 16, 1996, the government filed its motion for recusal seeking to have the undersigned removed from this case with

the case then being reassigned to another district court judge. This motion follows on the heels of a failed attempt at the circuit court level for a reassignment to another district court judge on remand from the government's appeal from several pretrial evidentiary rulings made by the court. On July 8, 1996, the Tenth Circuit Court of Appeals entered its order with respect to the pretrial evidentiary rulings, affirming in part and reversing in part, and remanding this case for proceedings consistent with its opinion. With respect to the reassignment issue, however, the Tenth Circuit declined to exercise its inherent authority to reassign this case to a different district court judge on remand. In making this determination, the Tenth Circuit stated the proper vehicle for seeking removal of a trial judge is by way of a motion for recusal before the district court in the first instance. Consequently, the government is now before the court seeking the recusal of the undersigned pursuant to 28 U.S.C. §§ 144 and 455(a). Having fully considered the government's motion, the court finds that it should be denied because it is not only procedurally defective as untimely, but substantively deficient and without merit.

## I.

The government claims that throughout this case the court has demonstrated a personal bias or prejudice against it or, alternatively, the facts and circumstances of this case indicate the impartiality of the court might reasonably be questioned. In particular, the government relies on several out-of-court statements made or claimed to have been made by the court to United States Attorney John Raley and First Assistant United States Attorney Sheldon Sperling. The government also claims certain rulings made by the court reflect a hostility or prejudice against the government.

A summary of the significant events is as follows. On June 9, 1995, Roberts, the Chief of the Choctaw Nation of Oklahoma, was indicted by a grand jury for the Eastern District of Oklahoma on charges of abusive sexual contact, aggravated sexual abuse, and sexual abuse of tribal employees, all of which allegedly took place within Indian Country at the Choctaw Nation headquarters in Durant, Oklahoma. The indictment was returned by the 1994 grand jury whose service was extended in 1995 upon special request made by the United States Attorney's Office. Sometime prior to the grand jury's return of the indictment against Roberts, the United States Attorney, being well aware of a 20–year standing policy of the court not to require grand jurors to serve more than one calendar year, approached the court about extending the service of the 1994 grand jury into calendar year 1995, to allow completion of an investigation under the supervision of Assistant United States Attorney Joe Wilson. Raley advised the court that extending the duty of the 1994 grand jury would save time and expense by not requiring the United States Attorney's Office to repeat many hours of testimony to the 1995 grand jury which had already been heard by the 1994 grand jury. Specifically, Raley informed the court it would be desirable to bring the 1994 grand jury back for one or two meetings for a matter Raley said, "Joe has." Although the trial judge had never before in his sixteen year tenure found it necessary to extend grand jurors' service into a second calendar year, consideration was given on this occasion as a result of the United States Attorney's request concerning "Joe's" 1994 investigation. It was public knowledge, because of ongoing criminal prosecutions before the court, that Assistant United States Attorney Joe Wilson was involved in the investigation of a sheriff in one of the counties in the eastern district and that the 1994 grand jury had presumably spent time and effort working on the case Raley described as "Joe's case." Based on Raley's request and the implication that the 1994 grand jury would be continuing to investigate a special project involving "Joe's case," the court extended the 1994 grand jury and scheduled an additional session for June 6, 1995.

Immediately prior to the June 6 extended session of the grand jury there were newspaper articles and television reports stating the June 6 grand jury would indict Roberts, with speculation about how the indictment might affect the upcoming race for the office of Chief of the Choctaw Nation, which position Roberts then held and for which he was a

candidate for re-election. Based on these public reports, the court became concerned about (1) the potential release of information to the media which should be made known only to the grand jury and (2) the apparent misrepresentation of a need for an extended grand jury. In this regard, the court was concerned about the fact that, if these reports were true, the United States Attorney's Office was planning to present Roberts' case to the overworked 1994 grand jury when the case could have been presented to the 1995 grand jury which had met less than two weeks earlier on May 24, 1995, and was scheduled to return less than two months later on July 26, 1995. The court saw no reason to burden the 1994 grand jury with matters the 1995 grand jury could handle.

Against this backdrop, the court thereafter requested a meeting with Raley in chambers on June 5, 1995. During that meeting, which was attended by Raley and Wilson, the court expressed its displeasure to Raley about the fact that it appeared the 1994 grand jury was to be presented with matters other than those involving "Joe's case" and about grand juror information being leaked to the media. The court also indicated to Raley that the indictment "would have the appearance" to the public of being politically motivated, that is, given the timing of the indictment in relation to the upcoming Choctaw tribal election, Roberts' trial could not be held prior to such election. Raley *agreed* it would have that appearance to the public, but denied any actual political motivation. The court believed it had been misled by the United States Attorney's Office concerning the matters to be presented during the June 6 session. Notwithstanding this belief, the court reluctantly agreed to allow the extended session to go forward because to do otherwise would require the presentation of "Joe's case" to the 1995 grand jury with considerable time and resources, both of the government and the 1995 grand jury, expended. As noted previously, the 1994 grand jury returned an indictment against Roberts on June 9, 1995. On June 23, 1995, in another in-chambers meeting with Raley, Assistant United States Attorney Bruce Green, United States District Judge Michael Burrage, and United States Magistrate Judge James

Payne on an unrelated matter, the court, when asked by Raley if it was satisfied now that the indictment had been handed down, again expressed its sentiments regarding the timing of the Roberts indictment having the "appearance" of being politically motivated. Once again, Raley *agreed* with this assessment, but he again denied any actual political motivation.

Following indictment, Roberts filed various motions including a motion for disclosure of Rule 404(b) evidence. The court granted Roberts' motion for disclosure of Rule 404(b) evidence and ordered the government to provide notice of the general nature of any such evidence it intended to introduce at trial by July 24, 1995. The government responded by filing sealed notices of Rule 404(b) evidence which listed victims of Roberts' alleged sexually abusive behavior. On August 3, 1995, the court entered an order directing that these sealed notices, along with another document filed under seal by the government related to the medical condition of one of the victims named in the indictment, be unsealed with copies provided to counsel for Roberts. That same afternoon, the government filed a motion to stay the court's order unsealing the documents. The government claimed the information to be disclosed included "confidential medical communications, as well as the identity of persons, statements and events which are currently under on-going investigation, which investigation would be substantially jeopardized and compromised" if the order were executed. The court set the matter for hearing at 8:30 a.m. on August 4, 1995. Following the hearing, the court denied the government's motion to stay. The hearing transcript is part of the record in this case. During the course of this hearing, in an in-camera session, certain statements were made by the court to First Assistant Sheldon J. Sperling, designated lead counsel for the prosecution. In this regard, the government relies on the comments made by the court during a dialogue with Sperling about the court's observations of Sperling's prosecutorial tactics. The court commented that its long-term experience with Sperling reveals he "hides things" and tries "to keep it away from the defendant until it's just virtu-

ally too late." The court told Sperling these trial techniques and tactics are "reprehensible and unethical."

In support of its motion, the government submits an affidavit from Raley outlining the government's case for recusal. Raley sets forth his version of the events leading up to the calling of the extended session of the 1994 grand jury and he recaps the proceedings surrounding the court's rulings. For the most part, the court does not take issue with the "factual" matters asserted by Raley in his affidavit regarding the existence of meetings, discussions about the 1994 grand jury extended session, and the court's rulings.[1] Raley's factual recitation is, however, overrun by opinion and speculation—all of which culminate to establish a contrived theory of oppression championed by the government in order to seek a different judge who may be more receptive to the government's trial tactics.

It is apparent from a review of the government's motion and Raley's affidavit that reliance is placed upon comments made by the court to government attorneys, subsequent adverse rulings related to the release of evidentiary materials to defense counsel, and a motion to stay the proceedings pending appeal. As explained below, these actions, either individually or collectively, are insufficient to warrant recusal. Moreover, the

court finds that the government's motion is untimely.

## II.

The government's motion is predicated on 28 U.S.C. §§ 144 and 455(a). Section 144 allows a party to request the disqualification of a district court judge when he has a personal bias or prejudice either against him or in favor of any adverse party.[2] This section is triggered by the filing of a timely affidavit by the party requesting disqualification. The trial court is obligated to review the sufficiency of the affidavit; a review, however, which is "restricted to its legal sufficiency and does not include the truth of the allegations." *United States v. Ritter*, 540 F.2d 459, 462 (10th Cir.), *cert. denied*, 429 U.S. 951, 97 S.Ct. 370, 50 L.Ed.2d 319 (1976). The court must assume the truth of the factual assertions contained within the affidavit even if it "knows them to be false." *United States v. Balistrieri*, 779 F.2d 1191, 1199 (7th Cir.1985), *cert. denied*, 475 U.S. 1095, 106 S.Ct. 1490, 89 L.Ed.2d 892 (1986). Personal rather than judicial bias must be established, however, and the affidavit must set forth "sufficiently definite and particular [facts] to convince a reasonable person that bias exists; simple conclusions, opinions, or rumors are insufficient." *United States v. Sykes*, 7 F.3d 1331, 1339 (7th Cir. 1993). Moreover, the filing of the affidavit

---

1. The court's summary recap of the events set forth above provides background, not contained in Raley's affidavit, about the events leading up to the recall of the 1994 grand jury. The only significant differences between the respective versions relate to the alleged comments made by the court. It appears to be Raley's contention that the court "accused" his office of professional misconduct and manipulation of the grand jury. Contrary to Raley's belief, the court did not "accuse" anyone, but rather, consistently stated the timing of the return of the indictment against Roberts "appeared" or "would have the appearance" of being politically motivated. In fact, as previously noted, the court recalls Raley agreed with this assessment. Raley also states the court told him "the case stinks" and it "would have to swallow a camel" to believe the return of the indictment was not politically motivated. The court does not recall either making these latter two comments or the context in which they may have been made. Even assuming these comments were made, however, they obviously only relate to the timing consideration

addressed by the court and the court's concern about the "appearance" of political motivation.

2. The full text of section 144 provides:

Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

must be timely, that is, it must be filed "at the first opportunity after discovery of the facts tending to prove disqualification." *Sine v. Local No. 992 Intern. Broth. of Teamsters,* 882 F.2d 913, 915 (4th Cir.1989); *Sykes,* 7 F.3d at 1339.

■ Section 455(a) is part of a 1974 amendment to the statute and it provides a broader basis for disqualification.[3] "The general language of subsection (a) was designed to promote public confidence in the integrity of the judicial process by replacing the subjective ['in the opinion of the judge'] standard with an objective test." *Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847, 858 n. 7, 108 S.Ct. 2194, 2202 n. 7, 100 L.Ed.2d 855 (1988). The test is "whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality." *Hinman v. Rogers,* 831 F.2d 937, 939 (10th Cir.1987). A judge's "actual state of mind, purity of heart, incorruptibility, or lack of partiality are not the issue." *United States v. Cooley,* 1 F.3d 985, 992 (10th Cir.1993).

■ In evaluating a motion under section 455(a), the court must initially determine "whether a reasonable **factual** basis exists for calling the judge's impartiality into question." *Id.* at 993. Unlike the evaluation under section 144, the factual allegations of the movant need not be taken as true and the court is not limited by the facts as presented by the movant. *Hinman,* 831 F.2d at 939; *see also In re Beard,* 811 F.2d 818, 827 (4th Cir.1987) (judge not bound to accept allegations as true when considering a motion filed under section 455 seeking disqualification). The Tenth Circuit has cautioned that "section 455(a) must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice." *United States v. Hines,* 696 F.2d 722, 729 (10th Cir.1982). A judge should not recuse himself based on unsupported, irrational, or highly tenuous speculation. *Hinman,* 831 F.2d at 939. A judge must be ever vigilant of his equally compelling duty to

hear a case when there is no legitimate reason to recuse as he is of his duty to recuse when the facts and circumstances warrant. *United States v. Greenspan,* 26 F.3d 1001, 1005 (10th Cir.1994). Section 455(a) should not be used as a judge shopping device inasmuch as it was "not intended to give litigants a veto power over sitting judges, or a vehicle for obtaining a judge of their choice." *Cooley,* 1 F.3d at 993. Finally, like a section 144 disqualification motion, a motion under section 455(a) must be timely filed, *Willner v. University of Kansas,* 848 F.2d 1020, 1022 (10th Cir.1988), *cert. denied,* 488 U.S. 1011, 109 S.Ct. 797, 102 L.Ed.2d 788 (1989), with the test for timeliness being that the issue of disqualification must be raised at the earliest moment after the movant has knowledge of the facts giving rise to disqualification. *See United States v. Owens,* 902 F.2d 1154, 1156 (4th Cir.1990).

### III.

■ The government first moved for disqualification in a brief filed with the Tenth Circuit on December 30, 1995. The government sought to have the Tenth Circuit exercise its inherent authority and reassign this case to a different district court judge on remand. Following that unsuccessful attempt, the government filed a motion with this court on September 16, 1996, seeking recusal. Even assuming the government's request for disqualification contained in their appellate brief qualifies as the filing of the affidavit required under section 144 and the motion for recusal under section 455(a), the court nonetheless finds the government has failed to raise the issue of disqualification in a timely fashion.

The events which give rise to the government's request for disqualification occurred in June and August 1995. As asserted by Raley in his affidavit, the government knew of the court's comments about the use of the 1994 grand jury sometime in June 1995. Additionally, the comments directed towards Sperling were made in early August 1995.

---

**3.** Section 455(a) provides:
Any justice, judge or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

These are the central allegations which support the government's request for recusal and its claim that the court exhibited bias, hostility, and prejudice against it.[4] Despite the government's knowledge of these comments, it waited until December 1995 to request disqualification. Having waited six months with regard to the 1994 grand jury comments and four months with regard to the Sperling comments, the court finds the government's request was not filed at the earliest possible moment following discovery and, therefore, it is untimely under both sections 144 and 455(a). *See Sykes,* 7 F.3d at 1339 (defendant's section 144 affidavit was untimely where it was filed two months after judge's allegedly prejudicial remarks).[5]

## IV.

■ Going beyond the timeliness issue, the court concludes the government's motion for recusal under both sections 144 and 455(a) is legally insufficient. In *Cooley,* the Tenth Circuit compiled a nonexhaustive list of factors in cases involving recusal motions under sections 144, 455(a), or 455(b)(1) which are not ordinarily sufficient to require disqualification. Included within that list were the following factors:

(1) Rumor, speculation, beliefs, conclusions, innuendo, suspicion, opinion, and similar non-factual matters, ... (3) prior rulings in the proceeding, or another proceeding, solely because they were adverse, ...

*Id.* at 993–94 (citations omitted). The government has raised precisely these factors in seeking recusal. The government objects to the comments made by the court in June and August 1995; comments which merely reflected the court's belief and opinion, based on the facts and circumstances known by the court, that (1) the 1994 grand jury was being used for purposes not previously requested, i.e., the court was misled about the scope of the extended session, (2) the timing of the indictment against Roberts was politically motivated (if Raley's version is taken as true) or had the appearance of being politically motivated (according to the court's version), and (3) certain trial techniques and tactics by Sperling did not comport with the court's concept of prosecutorial conduct which has as its goal a fair and level playing field for the administration of justice. None of these comments reflected in any way on the strength or validity of the government's case or exhibited any bias or prejudice either in favor of Roberts or against the government. These were comments directed to government attorneys based on one's reasonable, objective view of the events that had transpired. However harsh, ill-advised, intemperate, and critical Raley and Sperling may feel the comments were, they nonetheless constitute only the court's opinions and beliefs with respect to matters collateral to proceedings in this case. As such, they are insufficient to establish the requisite bias or prejudice necessary for recusal. Moreover, the government cannot transform these comments into bias or prejudice against it based

---

4. While there are additional allegations of bias and prejudice asserted by the government, these allegations involve adverse rulings entered by the court in August 1995 (unsealing of documents) and December 1995 (denial of stay request pending appeal). As discussed below, adverse rulings do not support a claim for recusal.

5. It should be noted the government did not seek recusal until after several adverse rulings were entered against it related to the admissibility of evidence. On October 4, 1995, the court ruled Fed.R.Evid. 413 was not applicable because the indictment was returned prior to the effective date of the rule. On November 14, 1995, the court granted Roberts' motion in limine under Fed.R.Evid. 404(b) and 403 by excluding testimony from nine women not named in the indictment who were allegedly sexually abused by Roberts and also deferred ruling on Rule 404(b)

evidence related to the victims named in the indictment. Also on November 14, 1995, the court found inadmissible evidence relating to Roberts' alleged role in shortening a tribal statute of limitations to prevent one of the alleged victims from bringing a civil action against Roberts. On November 21, 1995, the court denied the government's motion to stay pending appeal. It wasn't until after these adverse rulings that the government sought disqualification. Rather curiously, the government appeared quite content and did not seek disqualification immediately after the September 29, 1995, denial of Roberts' motion to dismiss the indictment, *United States v. Roberts,* 904 F.Supp. 1262 (E.D.Okla.1995), even though this ruling was made *after* the June and August comments. From a fair and objective view of this record, one might question the credibility of the government's asserted position.

on the perception and suspicion of oppression and hostility championed by Raley and Sperling.

■ Finally, the remaining basis for the government's motion involves its displeasure with several of the court's rulings. This basis is legally insufficient. "Adverse rulings against a litigant cannot in themselves form the appropriate grounds for disqualification." *Green v. Dorrell,* 969 F.2d 915, 919 (10th Cir.1992), *cert. denied,* 507 U.S. 940, 113 S.Ct. 1336, 122 L.Ed.2d 720 (1993).

Consequently, the court concludes there is no factual or legal basis for the undersigned to recuse as the government has (1) failed to establish a case of personal bias or prejudice against it and (2) failed to satisfy its obligation of showing a reasonable person armed with the relevant facts would harbor doubts about the undersigned's impartiality with respect to the government.

## V.

Based on the foregoing reasons, the court concludes the government's motion for recusal under sections 144 and 455(a) should be denied because it was not timely filed and it lacks any substantive merit. The motion for recusal is therefore denied.