**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Aziz SADIQ, a/k/a Domonique Kender,**
**Defendant–Appellant.**

No. 96–3182.

United States Court of Appeals,
Seventh Circuit.

Argued April 16, 1997.

Decided June 12, 1997.

Rehearing Denied July 14, 1997.

J. Christopher Moore (argued), Office of the United States Attorney, Benton, IL, for Plaintiff-Appellee.

Kathleen Gorr (argued), Glen Ellyn, IL, for Defendant-Appellant.

Before ROVNER, DIANE P. WOOD, and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

Aziz Sadiq was an entrepreneur. He ran a family business in partnership with a stepbrother, employing his grandmother and a cousin. Unfortunately the product he sold was crack cocaine, and when his business ran into trouble he ended up, not in bankruptcy, but in a federal prison, where he is serving a lengthy sentence of 336 months. It is the length of his sentence which he appeals. In effect, his claim is that his business was neither so large nor so successful as the government contends.

From 1992 to 1995 Sadiq and his stepbrother, Khalil Ataa (we think "stepbrother" is right but Ataa is called a "half brother" at various times in the record), distributed drugs out of his grandmother Alzena McCall's house in Mount Vernon, Illinois. Ataa managed a similar business in nearby Centralia, Illinois. Sadiq and Ataa often traveled together to Waukegan, Illinois, to buy drugs. They brought the drugs back to Sadiq's residence—Granny McCall's house—in Mount Vernon, where they cooked crack. They and their dealers then sold the drugs in Mount Vernon and Centralia.

On April 18, 1995, Sadiq and three others, Ahmad Smith, Robert Lockett a/k/a Anthony Cofield, and McCall were indicted and charged with, among other things, conspiracy to distribute crack cocaine. All eventually pleaded guilty to the conspiracy count.

In addition to the conspiracy, Sadiq was charged with simple distribution of crack cocaine, distribution within 1,000 feet of a school, being a felon in possession of a firearm, and a count, later dismissed, of using or carrying a firearm in connection with a drug offense. He entered his guilty pleas to 11 counts of the indictment on the morning his trial was scheduled to begin. His partner, Ataa, was charged in a separate case. He also entered a guilty plea and was sentence to 135 months in prison.

On June 22, 1995, and again on July 5, 1995, Ataa and Lockett gave proffer statements to government agents regarding their knowledge of the operation. On July 10 Sadiq also gave a proffer statement.

One of Sadiq's claims is that the government violated the agreement it made regarding the use of his statement. He contends that the proffer was improperly used in the preparation of the presentence investigation report and that the court abused its discretion in allowing it into evidence at sentencing. As will soon become clear, we are convinced that there was no abuse of discretion by the court and that there was evidence independent of the proffer of all matters relied on at sentencing.

As we noted, Sadiq now complains that the sentencing judge, Judge J. Phil Gilbert, found him to be a more successful drug dealer than he really was. His offense level was set at level 34, meaning he was found to have distributed more than 3,000 kilograms of marijuana equivalence units (MEU). MEU were used in setting the offense level because both crack and powder cocaine were sold. Relying on the presentence report, Judge Gilbert found that Sadiq distributed 6,542 kilograms MEU. On appeal, Sadiq admits he distributed 2,952.4 kilograms MEU, which puts him at offense level 32.

We review the district court's findings for clear error. A finding is clearly erroneous when, even though there is evidence to support it, we are firmly convinced that a mistake has been committed. *United States v. Sykes,* 7 F.3d 1331, 1335 (7th Cir. 1993). In this case, we are far from convinced of that.

There are several amounts which the district court could find, by a preponderance of the evidence, are attributable to Sadiq. These amounts, added to the 2,952.4 kilo-

grams MEU which he concedes, put him well over 3,000 kilograms MEU and into base offense level 34.

For instance, in his proffer Robert Lockett said he purchased half-gram quantities of crack from Sadiq 10 to 15 times at Sadiq's residence. If it was 10 times, the purchase is of 5 grams of crack, which is 100 kilograms MEU. Sadiq disagrees with the number of purchases but concedes that he sold to Lockett in half-gram quantities about five times. That concession itself puts his relevant conduct over 3,000 kilograms MEU.

And there are other amounts. As set out in the presentence report, a confidential source purchased 1/8-ounce to 1/4-ounce quantities of crack from McCall and Sadiq five or six times. This is at least 354 kilograms MEU. Another 8 grams of crack (160 kilograms MEU) were seized from Sadiq's living quarters on November 5, 1994.

Other amounts which the district judge could reasonably credit include powder cocaine that two other family members—Maria Love and Patrick Nelson—stole from Sadiq. Lockett says they stole 1,000 grams of powder cocaine (200 kilograms MEU). Sadiq disagrees and says they stole 9 ounces of crack (5,100 kilograms MEU). Again, Sadiq's own testimony means that the 3,000 kilogram threshold is crossed. There is simply no clear error in Judge Gilbert's finding that Sadiq's drug quantity put him in level 34 on the guideline grid.

 Sadiq also contends that he did not have a leadership role in this operation and thus the court should not have imposed a 4-level upward adjustment for his role in the offense. Section 3B1.1(a) provides for a 4-level increase in a defendant's offense level if he was "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive...." The application notes provide that a participant is a person who is criminally responsible for the offense, but that he need not have been convicted. Factors to be considered in assessing a leadership role include whether the person had decision making authority, whether he recruited accomplices, his degree of planning of the offense, the scope of the illegal activity and the degree of control he exercised over others.

Sadiq is nothing if not a leader. He shared control with his acknowledged partner, his stepbrother Ataa. There is evidence from which the district judge could conclude that both individually and together with Ataa, Sadiq exercised control over five or more participants.

In his appellate brief Sadiq acknowledges that Granny McCall, Gregory Goodpasture, and Miguel Rios sold drugs for him. There were two other people indicted along with him in this conspiracy: Ahmad Smith and Lockett. Before this court, Sadiq says they were merely customers; as to the role these two played, Sadiq also argues that the presentence report must have impermissibly relied on his proffer, which he contends would be a violation of his agreement with the government that paved the way for his statement. The support for Sadiq's proposition is that in his proffer he referred to Smith and Lockett as "servers" of his drugs to his customers, and the presentence report uses the same word. Therefore, he contends, the proffer was used.

We cannot accept this argument. There is independent evidence from which the district judge concluded that both Smith and Lockett were participants. For one thing, Sadiq himself said that he sold them drugs. Although he contended they were merely customers, from all the evidence before him Judge Gilbert reasonably concluded otherwise. Lockett told the government that he had seen Ahmad Smith selling drugs at Sadiq's residence. Ataa stated that Ahmad distributed approximately 1/2 ounce of crack per day for him or for Sadiq. Lockett and Smith entered guilty pleas to being involved with Sadiq in a conspiracy to distribute crack cocaine. In fact, at the hearing at which Sadiq entered his guilty plea the prosecutor stated in his offer of proof:

> Additionally, we'd call Ahmad Smith who is a conspirator. We would call Robert Lockett who is also know as Anthony Colfield [sic] who would testify they were conspirators with Aziz Sadiq. They were involved in the purchase of crack cocaine and trafficking crack cocaine with Aziz Sadiq and—Sadiq—and for Aziz Sadiq.

At his plea hearing Sadiq agreed that this representation was "essentially correct."

There are also other participants. Lockett said he had seen Patrick Nelson sell crack at Sadiq's house. Ataa lists six other persons who were used to distribute from 1/2 to 1/16 ounces per day in Mount Vernon. These include persons he identifies as Kevin Birdo, "B.K." Baron Knox, "Skinny Pimp" Donuell Rayford, Maurice Mays, Broche Taylor, and George Jones. In addition, Ataa listed several people who sold drugs in the Centralia operation. After reviewing this record, we are not left with any feeling that a mistake has been made in attributing to Sadiq a leadership role in this offense.

Finally, we note that Sadiq hints that he finds it unfair that he was given an upward adjustment for his role in the offense while Ataa was not given a similar move. Any argument to this effect must fail. We will not disturb a sentence because another defendant was treated differently, *United States v. Colello*, 16 F.3d 193 (7th Cir.1994), if the objector—Sadiq here—was sentenced in accordance with the guidelines. He was.

AFFIRMED.