

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-5-2008

# USA v. Jacobs

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4405

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Jacobs" (2008). *2008 Decisions.* Paper 1058.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1058

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 06-4405

UNITED STATES OF AMERICA

v.

ANDRE L. JACOBS,

Appellant

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court No. 05-cr-64
District Judge: The Honorable Gustave Diamond

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 22, 2008

Before: SMITH, HARDIMAN, and NYGAARD, *Circuit Judges*

(Filed: June 5, 2008 )

OPINION

SMITH, *Circuit Judge*.

Andre Jacobs appeals from his judgment of conviction, entered in the United

States District Court for the Western District of Pennsylvania on October 2, 2006, for

assault of a United States Marshal in violation of 18 U.S.C. §§ 111(a)(1) and (b).  The

District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have appellate

jurisdiction pursuant to 28 U.S.C. § 1291. For the reasons below, we will affirm the judgment of conviction.

I.

Jacobs was a state prisoner who filed a civil lawsuit in the Western District of Pennsylvania that went to trial in March of 2005. United States District Judge Conti presided over the trial, which took place in the Federal Courthouse in Pittsburgh. During the trial, Jacobs alleged that he was mistreated by the Deputy Marshals responsible for bringing him to and from his holding cell each day to attend the trial, but Judge Conti denied his request for a mistrial. Jacobs was in the courtroom when the jury delivered a verdict against him. Several Deputy Marshals then began to escort Jacobs back to his holding cell, and one of them handcuffed him with his hands in front of him so that he could carry his legal papers. When Jacobs refused to enter the elevator on his own, Deputy Potter and a state correctional officer began to force him into the elevator. As they entered, Jacobs threw his legal papers at Deputy Potter's face and attacked Deputy Potter with his handcuffs. One of Jacobs' blows injured Deputy Potter's wrist severely enough that surgery was required. Jacobs continued to attack the Deputy Marshals in the elevator, requiring them to carry him to his holding cell.

A grand jury charged Jacobs with one count of assaulting and inflicting bodily injury on United States Marshals in violation of 18 U.S.C. §§ 111(a)(1) and (b). Jacobs pled not guilty, and Judge Gustave Diamond was assigned to the case. Jacobs filed a

2

motion to recuse all of the judges stationed in the Pittsburgh courthouse under 28 U.S.C. § 455(a), or in the alternative, for a change of venue to another courthouse in the Western District of Pennsylvania. He also requested an order compelling the Government to identify which of Jacobs' prior criminal offenses or acts of misconduct it planned to introduce as evidence at trial under Federal Rules of Evidence 404(b) or 609(b).

The District Court denied Jacobs' motion for recusal or change of venue, but it ordered the Government to notify Jacobs no later than 10 days prior to trial of any evidence that it planned to introduce under Rules 404(b) or 609(b). *See United States v. Jacobs*, No. 05-cr-64, 2006 U.S. Dist. LEXIS 6725, 2006 WL 456178 (W.D. Pa. Feb. 22, 2006). The Government responded that it would not introduce any such evidence in its case-in-chief but reserved the right to use it as impeachment or rebuttal evidence. Jacobs repeatedly asked the District Court to decide whether the Government would be allowed to introduce this evidence if he testified, saying that he could not otherwise make an informed decision about whether to take the stand. The District Court declined on the ground that the question was hypothetical, and would be so until the Court knew whether Jacobs would testify and what statements he would make. Ultimately, Jacobs did not testify. The jury returned a guilty verdict, and the District Court sentenced Jacobs to a 210-month term of imprisonment, to be served concurrently with the state court term of imprisonment that he was serving at the time. Jacobs filed a timely notice of appeal.

II.

3

We review a District Court's denial of a recusal motion for abuse of discretion. *Selkridge v. United of Omaha Life Ins. Co.*, 360 F.3d 155, 166 (3d Cir. 2004). Under 28 U.S.C. § 455(a), a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Because § 455(a) is intended to promote not only fairness to the litigants but also public confidence in the judiciary, a party seeking recusal need not demonstrate that the judge is actually biased, but rather that he would appear to be biased to "a reasonable person, with knowledge of all the facts." *United States v. Wecht*, 484 F.3d 194, 213 (3d Cir. 2007) (quoting *In re Kensington Int'l Ltd.*, 353 F.3d 211, 220 (3d Cir. 2003)). A recusal motion must be based on "objective facts," not mere "possibilities" and "unsubstantiated allegations." *United States v. Martorano*, 866 F.2d 62, 68 (3d Cir. 1989).

Jacobs argues that because the United States Marshals in the Pittsburgh courthouse are responsible for the personal safety of the judges stationed there, a reasonable person might reasonably question the impartiality of all of these judges. When making evidentiary rulings and other decisions, Jacobs contends, a judge might favor the people who protect him or her over a defendant who is accused of attacking those people. Moreover, Jacobs claims, a judge would have an incentive to impose a more severe sentence in order to avoid offending his or her protectors. (Jacobs suggests that a reasonable person might consider Judge Diamond's denial of his request for a downward departure to be evidence of such bias.) Because Jacobs does not claim that any particular

judge has a special relationship with any particular Marshal, the only question is whether an appearance of partiality is inherent whenever a judge presides over a trial involving a Marshal who works in the same courthouse.

We conclude that Jacobs has not shown that the District Court abused its discretion by denying the recusal motion. The relationship between Marshals and judges who share a courthouse is simply not close enough to cause a reasonable person to question the impartiality of all of the judges in any case involving a Marshal. The District Court correctly observed that Marshals are responsible for protecting not only judges, but also all other participants in a judicial proceeding, including defendants and defense counsel. *See* 28 U.S.C. § 566(e)(2)(A) ("The United States Marshals Service is authorized to . . . provide for the personal protection of Federal jurists, court officers, witnesses, and other threatened persons in the interests of justice . . ."). Moreover, Jacobs has offered no objective facts to support his suggestion that the consequences of "offending" the Marshals are so dire that judges would appear to be tempted to abandon their neutral role.

Our decision is consistent with those of other courts that have considered recusal motions in similar situations. *See, e.g.*, *United States v. Faul*, 748 F.2d 1204, 1210–11 (8th Cir. 1984) (declining to recuse a judge from the trial of defendants accused of killing two Marshals); *United States v. Sundrud*, 397 F. Supp. 2d 1230, 1233–37 (C.D. Cal. 2005) (declining to recuse all judges of the Central District of California from the trial of a defendant accused of assaulting a court security officer). Jacobs cites two cases in

5

which recusal was required, but both of these cases involved defendants whose offenses could have caused the judges' deaths. *United States v. Nettles*, 394 F.3d 1001 (7th Cir. 2005) (requiring recusal of all judges stationed in a courthouse that defendant attempted to bomb); *Nichols v. Alley*, 71 F.3d 347 (10th Cir. 1995) (requiring recusal of a judge whose chambers and courtroom were severely damaged by defendant's bombing of a nearby building). Just because an appearance of partiality might exist when a judge presides over the trial of his or her would-be killer does not mean that it exists when a judge presides over the trial of a defendant accused of injuring a Marshal's wrist.

We also review for abuse of discretion the District Court's denial of Jacobs' alternative motion for a change of venue within the Western District of Pennsylvania.[1] *See United States v. Inigo*, 925 F.2d 641, 654 (3d Cir. 1991). Changes of venue within a district are governed by FED. R. CRIM. P. 18, which states that "[t]he court must set the place of trial within the district with due regard for the convenience of the defendant and the witnesses, and the prompt administration of justice." Because the alleged victims, the prospective witnesses, and the defendant himself were located closer to Pittsburgh than Erie or Johnstown, the District Court did not abuse its discretion in concluding that the convenience of everyone favored a trial in Pittsburgh. Furthermore, as we concluded

---

[1] This motion differs little in substance from Jacobs' recusal motion, since the most likely effect of recusing all judges in the Pittsburgh courthouse would be to require relocation of the trial to the other Western District courthouses in Erie or Johnstown. Indeed, Jacobs' appellate briefs do not analyze his request for a change of venue separately from his recusal motion.

6

above, Jacobs has established neither the existence nor the appearance of partiality on the part of the Pittsburgh judges. Therefore, it was not an abuse of discretion for the District Court to deny Jacobs' change of venue motion.

III.

Jacobs contends that the District Court's refusal to rule on the admissibility of his past convictions and misconduct as impeachment evidence made it impossible for him to make a knowing and intelligent decision about whether to testify. He says that he was thereby deprived of his constitutional right to present a meaningful defense and that we should grant him a new trial.

We agree with the Government that Jacobs failed to preserve this issue for review because he did not testify. In *Luce v. United States*, 469 U.S. 38 (1984), the Supreme Court considered a similar situation. In *Luce*, the District Court ruled *in limine* that the defendant's prior conviction "fell within the category of permissible impeachment evidence" under Federal Rule of Evidence 609(a), but it "was prepared to hold that the prior conviction would be excluded" depending on the nature of the defendant's testimony. *Id.* at 39–40. The defendant did not testify, and attempted to appeal the *in limine* ruling after the jury convicted him. *Id.* at 40. The Supreme Court held that "to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify." *Id.* at 43. The Court explained that admission of a prior conviction requires a reviewing court to balance its probative value against its prejudicial

7

effect, and "[t]o perform this balancing, the court must know the precise nature of the defendant's testimony, which is unknowable when, as here, the defendant does not testify." *Id.* at 41. *Luce* is instructive even though the District Court in *Luce* ruled on the admissibility of the evidence *in limine* whereas Judge Diamond declined to make a ruling. As the Supreme Court explained, a district judge is "free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." *Luce*, 469 U.S. at 41–42. Thus, even if Judge Diamond had made a hypothetical ruling on the admissibility of the evidence, Jacobs would have had no guarantees about what would happen if he testified. The reasoning of *Luce* leads us to the conclusion that Jacobs was required to testify in order to preserve this issue.

Even aside from Jacobs' failure to preserve the issue by testifying, we see no merit to his claim that the absence of a ruling deprived him of his right to present a defense. A court's decision to allow cross-examination or impeachment of a testifying defendant does not necessarily deprive that defendant of his or her constitutional rights. *See, e.g.*, *Portuondo v. Agard*, 529 U.S. 61, 69 (2000) (explaining that it is the Court's "longstanding rule that when a defendant takes the stand, 'his credibility may be impeached and his testimony assailed like that of any other witness.'" (quoting *Brown v. United States*, 356 U.S. 148, 154 (1958))); *Perry v. Leeke*, 488 U.S. 272, 282 (1989) ("when [a defendant] assumes the role of a witness, the rules that generally apply to other witnesses—rules that serve the truth-seeking function of the trial—are generally

8

applicable to him as well."). This is true even though the admission of the evidence might deter the defendant from testifying altogether. *See Jenkins v. Anderson*, 447 U.S. 231, 238 (1980) ("A defendant may decide not to take the witness stand because of the risk of cross-examination. But this is a choice of litigation tactics." (quoting *Brown*, 356 U.S. at 156 (1958))). Although Jacobs objects to the lack of a decision about the evidence instead of the actual admission of the evidence, we think that this makes little difference. If Jacobs' constitutional right to present a defense would not be infringed if he was deterred from testifying by a ruling that impeachment evidence is admissible, then it follows *a fortiori* that this right is not infringed when he is deterred from testifying by the *possibility* that impeachment evidence is admissible. Moreover, as we discussed above, a court may alter initial evidentiary rulings as the trial unfolds, so any ruling would carry with it the possibility of revocation. Even if Jacobs had preserved the issue, we would find no error in the District Court's decision not to rule on the hypothetical issue.

For the reasons above, we will affirm Jacobs' conviction.